<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SPENCER SAVINGS BANK, S.L.A., a mutual savings and loan association,<br><br>*Plaintiff*,<br><br>v.<br><br>BANK OF AMERICA CORP., successor to Countrywide Financial Corp., COUNTRYWIDE FINANCIAL CORP; COUNTRYWIDE HOME LOANS, INC.; COUNTRYWIDE HOME SERVICING, L.P; BANK OF AMERICA, N.A.; and BAC HOME LOAN SERVICING, L.P.,<br><br>*Defendants*. | Civil No.: 14-4633 (KSH) (CLW)<br><br><br><br><u>**Opinion**</u> |

**Katharine S. Hayden, U.S.D.J.**

**I.     Introduction**

Spencer Savings Bank, S.L.A. ("Spencer"), brought suit against defendants claiming they breached a Mortgage Loan Purchase and Security Agreement (the "Agreement") by failing to satisfy their obligations in servicing 42 mortgage loans Spencer purchased under that contract. Defendants removed this action from state court, relying on this Court's diversity jurisdiction, and they now move to dismiss counts 1 and 4 of the complaint pursuant to Fed. R. Civ. P. 12(b)(6). [D.E. 11.]  As set forth below, the motion to dismiss count 1 will be denied, and the motion to dismiss count 4 will be granted.

**II.     Background**

Spencer is a mutual banking association with its principal place of business in Elmwood Park, New Jersey. (D.E. 1-2, "Compl.," ¶ 1.) It entered into the Agreement with Countrywide Home Loans, Inc. ("CHL") on April 29, 2005, for the purchase of 130 mortgage loans. (Compl., ¶ 2; D.E 1-2, Ex. A, "Agreement" § 8.09.) Spencer claims that 99 of these remain active. (Compl., ¶ 2.) Through a series of transactions that began in July 2008, Bank of America, Corp. ("BoA") acquired Countrywide Financial Corp. ("Countrywide Financial") and all of its subsidiaries, including CHL. (Compl., ¶¶ 23-28.) BoA merged all of Countrywide Financial's mortgage operations with its own mortgage operations to form BAC Home Loan Serving, L.P. ("BAC") in April 2009. (*Id.*) BAC then merged with BoA in July 2011, and BoA assumed all of BAC's liabilities, including those under the Agreement.[1] (*Id.* ¶¶ 15, 29.)

The Agreement provided that CHL, and now BoA, would service the mortgage loans Spencer purchased for a fee. (*Id.* ¶¶ 3, 13; Agreement §§ 4.01-4.8, 8.09.) BoA was to "employ procedures in accordance with the customary and usual standards of practice of prudent mortgage servicers," and "use reasonable efforts to foreclose upon or otherwise comparably convert the ownership of the properties securing such Mortgage Loans as come into and continue in default and to which no satisfactory arrangements can be made for collection of delinquent payments." (*Id.* §§ 4.01, 4.03(a).) According to Spencer, BoA breached these duties in servicing 42 of the 99 active loans, which "either are, or have been, in collection." (Compl., ¶¶ 50, 51.)

In the complaint, Spencer offers an extensive list of reasons supporting its claims that BoA failed to fulfill its obligations as the mortgage loans' servicer, including: (1) a "lack of diligence in servicing the loans," resulting in "unreasonable delay" and increased expenses; (2) neglecting

---

[1] The Court will refer to BoA as the sole defendant because it is the only surviving entity that serviced the loans Spencer purchased.

to collect mortgage payments that are due; (3) inadequate record maintenance; (4) failure to adjust interest rates and monthly payments as required by the terms of the mortgage loans, applicable law, and standard mortgage servicer practices; (5) "failure to execute and deliver all appropriate notices"; (6) not providing monthly reports to Spencer regarding delinquent loans; (7) not mitigating the loss on delinquent loans by negotiating loan modifications, timely initiating foreclosure proceedings, or seeking the appointment of a rent receiver; (8) improper filing and documenting of mortgage assignments; (9) "failure to modify the loans in a manner to maximize collateral value"; (10) not issuing compliant Notices of Intent to Foreclose or failing to do so in a reasonably timely manner; (11) "failure to file *lis pendens* on chronically delinquent accounts" thereby delaying foreclosure proceedings; and (12) not requesting relief from the automatic stay within a reasonable time after the mortgagor files for bankruptcy. (*Id.* ¶ 55(a)-(v).)

Spencer claims to have first become aware of BoA's alleged neglect of its servicer duties on May 9, 2012. (*Id.* ¶ 104.) It contends that it demanded that BoA cure the loan portfolio's decrease in value that resulted from BoA's participation in the "robo-signing scandal"; BoA's improper assignment of the mortgages to itself, when they had already been assigned to Spencer; the deficient Notices of Intent to Foreclose that incorrectly identified the mortgage holder, causing the delay of all uncontested foreclosures; and the absence of communication to Spencer regarding non-performing loans. (*Id.*) BoA rejected these requests on June 8, 2012, and on June 21, 2012, Spencer gave notice to BoA that it was terminating the Agreement, demanding that BoA "assemble and deliver," with a full accounting, all of the loan files serviced within 30 days. (*Id.* ¶¶ 105, 106.) The Court gleans that two years later, on March 10, 2014, after what Spencer characterizes as "an exhaustive review of the subject loan files," Spencer demanded that BoA repurchase the 42 delinquent loans and reimburse it for consequential damages totaling $10,841,252.38. (*Id.* ¶ 107.)

After receiving no response from BoA, Spencer filed the instant complaint on May 20, 2014, in state court. (Compl.)  In count 1, Spencer brought a breach of contract claim.  (*Id.* ¶ 111.) It sought indemnification in count 2 for all losses and legal expenses caused by BoA's breaches. (*Id.* ¶¶ 113, 114.)  Count 3 contained a claim that BoA is liable for all other defendants' breaches pursuant to a theory of successor liability as result of the series of mergers.  (*Id.* ¶¶ 116-124.) Spencer also demanded injunctive relief compelling BoA to repurchase the 42 delinquent loans at par value and to pay "all ancillary damages" for its breach in count 4.  (*Id.* ¶ 130.)

On July 23, 2014, BoA removed the action from state court on diversity grounds, and filed this motion to dismiss counts 1 and 4 of the complaint.  [D.E. 11.]

### III.  Discussion

#### A.  Standard of Review

A pleading must contain a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A court accepts all facts alleged as true, and those facts must "show that the claim is facially plausible" to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  This permits a "court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Accusations that "the-defendant-unlawfully-harmed-me" and "naked assertions devoid of further factual enhancement" will not suffice.  *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted).  The alleged facts, however, need only show that the claim for relief is plausible as opposed to merely possible. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011).

### B. <u>Count 1</u>

BoA moves to dismiss Spencer's breach of contract claim in count 1. The Agreement contains a choice of law provision in Section 8.09 that provides that it should be construed according to the laws of California. (Agreement § 8.09.) The parties do not contest the applicability of this provision. A cause of action for breach of contract in California requires a plaintiff to allege facts showing: "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *Blizzard Entm't, Inc. v. Ceiling Fan Software LLC*, 28 F. Supp. 3d 1006, 1017 (C.D. Cal. 2013) (quoting *Oasis W. Realty, LLC v. Goldman*, 124 Cal. Rptr. 3d 256, 263 (Cal. 2011)) (internal quotation marks omitted).

Both parties agree that the Agreement was a valid contract; that Spencer performed its obligations; and that Spencer suffered damages. BoA contends that count 4 fails to state a claim because its refusal to repurchase the 42 delinquent loans is not a breach. This argument looks too narrowly at Spencer's factual allegations in the complaint by focusing solely on the assertion that "BoA did not respond" to the demand to repurchase the delinquent loans. (Compl., ¶ 108.)

Spencer's other factual allegations regarding BoA's alleged servicing breaches are more than adequate to support a breach of contract claim. They primarily pertain to BoA's failure to service the 42 loans in the accordance with Article IV of the Agreement. For every loan, Spencer provides detailed reasons why BoA did not satisfy its obligations. For example, as to Loan No. 96617580, Spencer claims that it was 73 months overdue when the complaint was filed and that, after the borrower filed for bankruptcy in July 2009, BoA delayed attempting to lift the automatic stay until seven months later, despite not receiving any post-petition payments. (Compl., ¶ 58.) According to Spencer, Loan No. 99986001 was 64 months overdue, BoA failed to file a *lis*

*pendens*, and BoA took "no action" after sending two Notices of Intent to Foreclose in June 2012 and June 2013.  (*Id.* ¶ 64.)  Spencer gives reasons why BoA breached its obligations with respect to the other 40 delinquent loans as well.  The complaint recites that loans are overdue, some by as much as 60 months; that BoA failed to exercise diligence in collecting any arrears; that it did not employ proper procedures when assigning the loans; and that it failed to timely initiate or pursue foreclosure proceedings.  (Compl., ¶¶ 57-98.)  From these specific and thorough factual allegations, the Court is able to reasonably infer that BoA breached the Agreement so as to support a plausible claim for relief in count 1.

BoA's motion to dismiss count 1 is denied.

C.     <u>Count 4</u>

In count 4, Spencer seeks injunctive relief for BoA's alleged failure to service the loans because it "rendered the constituent loans virtually uncollectable, potentially unforecloseable" thereby exposing Spencer to "unmitigated loss." (Compl., ¶ 128.)  Spencer claims that money damages are inadequate due to "these contingencies" and requests an order directing BoA to repurchase the 42 delinquent loans and to pay "all ancillary damages at law flowing from [BoA's] breach of the Agreement."  (Compl., ¶¶ 129, 130.)

BoA argues that this claim must be dismissed because the Agreement's "plain and unambiguous language" only provides "for indemnification in the event of a servicing breach."  It contends that Article IV of the Agreement, which describes the servicer's duties, does not contain a repurchase remedy for a breach of those obligations.  BoA argues that Spencer must turn to Article VI for relief, which limits Spencer's remedies to indemnification.  BoA draws further support by contrasting Article IV with Article III, pointing out that Article III's remedies for defects in the quality of a loan at time of sale include repurchase.  If the Agreement contemplated

a repurchase remedy for a breach of Article IV, BoA argues, then similar language would appear there.  Spencer responds that BoA views the Agreement too narrowly and that even though Article IV may not grant it the right to seek specific performance -- i.e., the repurchase of the delinquent loans -- that remedy is provided for in Article VII, which provides for the remedy of termination and references specific performance.  Spencer also contends that Article VI does not "supplant" the remedies available elsewhere in the Agreement, but instead "supplements" them.[2]

Whether the Agreement provides Spencer the injunctive relief it demands is a question of contract interpretation.  Under California law, a court must "discern and enforce the parties' mutual intent at the time the contract was formed" by examining the contract's "objective, outward expression."  *Thor Seafood Corp. v. Supply Mgmt. Servs.*, 352 F. Supp. 2d 1128, 1131 (C.D. Cal. 2005) (citations and internal quotation marks omitted).  The contract's plain language controls so long as it is clear and unambiguous.  *Id.*

Article IV contains no remedies for a breach of the servicer's duties, but Section 6.01 in Article VI states that:

> In addition to the indemnification provided by Section 3.03(d), [BoA] shall indemnify [Spencer] and hold it harmless against any and all claims, losses, damages, penalties, fines, forfeitures, reasonable and necessary attorneys' fees and related costs, judgments, and any other costs, fees and expenses that [Spencer] may sustain in any way related to the failure of [BoA] to perform its obligations

---

[2] Spencer also alleges that a suit filed by the United States for fraud, which resulted in a jury verdict against BoA, operates as res judicata in the present matter. (Compl., ¶ 127; Exs. B, ¶¶ 167, 175, 183, C.)  But res judicata bars a subsequent action between the same parties when that exact controversy has already been litigated and decided in a prior proceeding, *Randolph v. Lipscher*, 641 F. Supp. 767, 775 (D.N.J. 1986) (Thompson, J.) (quoting *Lubliner v. Bd. of Alcoholic Beverage Control*, 33 N.J. 428, 435 (1960)), and it would be counterintuitive for Spencer to raise res judicata to bar a suit it brought.  Rather, the Court instead assumes that Spencer intended to raise collateral estoppel.  This doctrine "prevents parties from relitigating issues that have already been 'fairly litigated and determined.'"  *Pal v. Jersey City Med. Ctr.*, No. 11-6911, 2014 WL 3573405, at *3 (D.N.J. July 21, 2014) (Chesler, J.) (quoting *First Union Nat'l Bank v. Penn Salem Marina, Inc.*, 190 N.J. 342, 352 (2007)).  The prior proceeding that Spencer cites decided claims of fraud related to representations about mortgage loans' quality at the time of sale and not servicing breaches, *see* Complaint-in-Intervention, *United States ex rel. O'Donnell v. Bank of Am. Corp.*, No. 12-1422 (S.D.N.Y. Oct. 24, 2012); *see also* (Compl., Ex. C.), and thus, collateral estoppel does not apply to prevent BoA from defending against Spencer's allegations for breaching its duties as servicer here because they do not relate to misrepresentations about the loans Spencer purchased.  *See Pal*, 2014 WL 3573405, at *3.

>hereunder including its obligations to service and administer the Mortgage Loans in compliance with the terms of the Agreement.

Accordingly, BoA is obligated to indemnify Spencer for losses sustained "in any way related to the failure to perform . . . its obligations to service and administer the Mortgage Loans" under Article VI.  In contrast, Article III, which offers a repurchase remedy, pertains solely to representations and warranties made regarding the quality of the loans "as of each Closing Date." (*Id.* § 3.01.)  Section 3.03 lists the remedies available for a breach of the representations found in Section 3.01 and Section 3.02, which include BoA's right to cure, repurchase of the defective loan, and indemnification.  (*Id.* § 3.03(b)-(d).)

>If the breach shall involve a representation or warranty set forth in Section 3.02, . . . [BoA] shall repurchase the deficient Mortgage Loan. . . . At the time of repurchase . . . , [Spencer] and [BoA] shall arrange for the reassignment of such Mortgage Loan and release of the related Collateral File to [BoA] and the delivery to [BoA] of any documents held by [Spencer] or its designee relating to such Mortgage Loan.

(*Id.* § 3.03(c).)  Article III's repurchase remedy is limited to breaches defined in Section 3.02 of the Agreement, and these in turn relate to the quality of the loans at the time of sale.  (*Id.* § 3.02(e), (j).)  None of the representations in Section 3.02 describes BoA's duty as servicer, and therefore Article III's repurchase remedy is not available.  In *Encore Bank, N.A. v. Bank of America, N.A.*, 918 F. Supp. 2d 633, 651 (S.D. Tex. 2013), the district court considered a nearly identical contract and held that a plaintiff was not entitled to compel the servicer to repurchase delinquent loans for a breach of its duty as the loans' servicer, reasoning that the parties intended that damages be the only remedy available for such a breach.  This Court agrees.

Spencer's assertion that Article VII preserves its right to seek equitable remedies not provided for in the Agreement, including repurchase of the loans, is unpersuasive.  Section 7.01 in Article VII provides:

> In case one or more Events of Default by [BoA] shall occur and shall not have been remedied, [Spencer], by notice in writing to [BoA] may, in addition to whatever rights [Spencer] may have at law or equity to damages, including injunctive relief and specific performance, terminate all rights and obligations of [BoA] under this Agreement and [sic] in and to the Mortgage Loans and the proceeds thereof.

Default events include "any failure on the part of [BoA] to duly observe or perform in any material respect any of the covenants or agreements." (*Id.* § 7.01(a)(ii).) Although Section 7.01 would appear to allow Spencer to seek an injunction to compel a repurchase of the delinquent loans by preserving its rights in equity, a court will only grant an injunction ordering specific performance if the party sought to be enjoined was obligated to perform that act under the contract in the first place. *See Darling Int'l, Inc. v. Baywood Partners, Inc.*, No. C-05-3758, 2007 WL 2088366, at *21 (N.D. Cal. July 13, 2007) ("In order for a court of equity to decree that an obligation is specifically enforceable the terms of the contract must be complete and certain in all particulars essential to enforcement.") (internal citation and quotation marks omitted). Because the Agreement does not provide a repurchase remedy for a breach of servicing duties, there is nothing for this Court to compel by issuing an injunction.[3]

In its opposition brief, Spencer writes: "Spencer is seeking a remedy authorized by California law - partial rescission." This is the first time rescission is raised, as BoA points out and the Court's review of the complaint confirms. A plaintiff opposing a motion to dismiss is confined to the claims raised in its complaint and may not assert new ones for the first time in response to that motion. *See Hang On, Inc. v. City of Arlington*, 65 F.3d 1248, 1255-56 (3d Cir. 1995) (refusing to address a claim that the plaintiff raised for the first time in response to the

---

[3] Spencer also points to Section 7.02, claiming that BoA is obligated to repurchase the delinquent loans. Section 7.02, states that BoA may exercise its right to repurchase a loan when the principal balance of the loan is "less than ten percent (10%) of the aggregate Stated Principal Balances of the Mortgage Loans on the related Cut-Off Date" and the costs of servicing the loan would exceed the benefits accruing to BoA. (*Id.* § 7.02.) This section only gives BoA the option to repurchase the mortgage loans and does not offer Spencer any remedies in the event of BoA's breach.

defendant's motion for summary judgment); *Josko v. New World Sys. Corp.*, No. 05-4013, 2006 WL 2524169, at *7 (D.N.J. Aug. 29, 2006) (Kugler, J.) ("[A] plaintiff may not raise new claims for the first time in response to a motion to dismiss or other dispositive motion."). Spencer nonetheless fails to state a claim for rescission because the party seeking rescission must "[r]estore to the other party everything of value which [it] has received from [the other party] under the contract." CAL. CIV. CODE § 1691(b). Spencer has not alleged that it intends to, or is capable of, restoring to BoA that which it received under the Agreement.

## IV.   Conclusion

For the foregoing reasons, BoA's motion to dismiss count 4 is granted, and its motion to dismiss count 1 is denied. An appropriate order will be entered.

/s/Katharine S. Hayden   _
Dated: June 30, 2015                                                                 Katharine S. Hayden, U.S.D.J.