## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

———————————————————— x

SPENCER SAVINGS BANK, S.L.A., a mutual savings and loan association,

                          Plaintiff,

v.

BANK OF AMERICA CORPORATION, successor to Countrywide Financial Corporation; COUNTRYWIDE FINANCIAL CORPORATION; COUNTRYWIDE HOME LOANS, INC.; COUNTRYWIDE HOME SERVICING, LP; BANK OF AMERICA, N.A., and BAC HOME LOAN SERVICING, LP,

                         Defendants.

———————————————————— x

| : | Honorable Katharine S. Hayden, U.S.D.J. |
|---|---|
| : | |
| : | Civil Action No. 2:14-cv-04633-KSH-CLW |
| : | |
| : | **Electronically Filed** |
| : | |
| : | **Oral Argument Requested** |
| : | |
| : | **Return Date:  July 2, 2018** |

---

## BRIEF IN SUPPORT OF DEFENDANTS'
## MOTION FOR JUDGMENT ON THE PLEADINGS

---

**OF COUNSEL**:

Luke A. Connelly
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
(212) 294-6700

Joanna C. Wade
Stacie C. Knight
WINSTON & STRAWN LLP
100 North Tryon Street
Charlotte, North Carolina 28202
(704) 350-7700

WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
(212) 294-6700
James S. Richter

*Attorneys for Defendants
Countrywide Financial Corporation,
Countrywide Home Loans, Inc., and Bank of
America, N.A., in its own capacity and as
successor by July 1, 2011* de jure *merger to
BAC Home Loans Servicing, LP (f/k/a
Countrywide Home Loans Servicing, LP)*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND .................................................................................... 1

      A.     The Mortgage Loan Purchase and Servicing Agreement ("MLPSA")....................1

      B.     Spencer's Complaint and Claim for Attorneys' Fees .............................................3

PLEADING STANDARD ......................................................................................... 5

ARGUMENT ............................................................................................................ 5

      A.     Legal Standards for Recovery of Attorneys' Fees ................................................5

      B.     The Plain Language of § 6.01 Does Not Expressly Authorize the Recovery of Attorneys' Fees in Actions to Enforce the Contract............................................6

      C.     The Language of § 6.01 Is Akin to Indemnification Clauses, Which Must Specifically Provide for Attorneys' Fees in an Action on the Contract .................8

      D.     California Courts Have Concluded that Virtually Identical Language Excludes Attorneys' Fees in Direct Actions on the Contract ...............................10

      E.     Section 6.01 Differs Materially from Provisions Held to Cover Breach of Contract Claims .................................................................................................12

      F.     Even if the Court Determined that § 6.01 Authorized the Recovery of Fees Here, the Recovery Is Reciprocal and Constrained by California Law .................14

CONCLUSION...................................................................................................... 16

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*3250 Wilshire Blvd. Bldg. v. W.R. Grace & Co.*,
   990 F.2d 487 (9th Cir. 1993) ...................................................................6

*Alki Partners, LP v. DB Fund Servs., LLC*,
   209 Cal. Rptr. 3d 151 (Ct. App. 2016) .......................................... *passim*

*Baldwin Builders v. Coast Plastering Corp.*,
   24 Cal. Rptr. 3d 9 (Ct. App. 2005)....................................................12, 13

*Berkla v. Corel Corp.*,
   302 F.3d 909 (9th Cir. 2002) .................................................................15

*Bldg. Maint. Serv. Co. v. AIL Sys., Inc.*,
   55 Cal. App. 4th 1014 (1997) ................................................................11

*Brown Bark III, L.P. v. Haver*,
   162 Cal. Rptr. 3d 9 (Ct. App. 2013) ...................................................5, 6

*Cal.-Am. Water Co. v. Marina Coast Water Dist.*,
   227 Cal. Rptr. 3d 110 (Ct. App. 2017), *review denied* (Feb. 28, 2018)....................................14

*Campbell v. Scripps Bank*,
   78 Cal. App. 4th 1328 (2000) ................................................................11

*Carr Bus. Enters., Inc. v. City of Chowchilla*,
   82 Cal. Rptr. 3d 128 (Ct. App. 2008) ..........................................9, 10, 11

*Continental Heller Corp. v. Amtech Mech. Servs., Inc.*,
   53 Cal. App. 4th 500 (1997) ..................................................................13

*Dream Theater, Inc. v. Dream Theater*,
   21 Cal. Rptr. 3d 322 (Ct. App. 2004),
   *as modified on denial of reh'g* (Dec. 28, 2004) ....................................13

*Eden Twp. Healthcare Dist. v. Eden Med. Ctr.*,
   162 Cal. Rptr. 3d 932 (Ct. App. 2013) .................................................7-8

*Exxess Electronixx v. Heger Realty Corp.*,
   64 Cal. App. 4th 698 (1998) ....................................................................7

*Hillman v. Leland E. Burns, Inc.*,
   209 Cal. App. 3d 860 (1989) .................................................................11

*Hilltop Inv. Assocs. v. Leon*,
    33 Cal. Rptr. 2d 552 (Ct. App. 1994) ...................................................................15

*Hsu v. Abbara*,
    891 P.2d 804 (Cal. 1995) ...................................................................................7

*Kytasty v. Godwin*,
    102 Cal. App. 3d 762 (1980) .............................................................................15

*Marina Pacifica Homeowners Ass'n v. S. Cal. Fin. Corp.*,
    228 Cal. Rptr. 3d 799 (Ct. App. 2018), *review filed* (Mar. 16, 2018) ...................15

*Meininger v. Larwin-N. Cal., Inc.*,
    63 Cal. App. 3d 82 (1976) .................................................................................11

*Musaelian v. Adams*,
    198 P.3d 560 (Cal. 2009) ...................................................................................5

*Myers Bldg. Indus., Ltd. v. Interface Tech., Inc.*,
    17 Cal. Rptr. 2d 242 (Ct. App. 1993),
    *as modified on denial of reh'g* (Mar. 26, 1993).........................................8, 9, 10

*Otis Elevator Co. v. Toda Constr. of Cal.*,
    27 Cal. App. 4th 559 (1994) ..............................................................................11

*PLCM Grp. v. Drexler*,
    997 P.2d 511 (Cal. 2000), *as modified* (June 2, 2000)......................................14, 16

*Revell v. Port Auth. of N.Y., N.J.*,
    598 F.3d 128 (3d Cir. 2010)................................................................................5

*Santisas v. Goodin*,
    951 P.2d 399 (Cal. 1998) ...................................................................................14

*Scott Co. of Cal. v. Blount, Inc.*,
    20 Cal. 4th 1109 (1999) ...............................................................................14, 15

*Sikirica v. Nationwide Ins. Co.*,
    416 F.3d 214 (3d Cir. 2005)................................................................................5

*Silver Creek, LLC v. BlackRock Realty Advisors, Inc.*,
    93 Cal. Rptr. 3d 864 (Ct. App. 2009) ...................................................................7

*Turner v. Schultz*,
    96 Cal. Rptr. 3d 659 (Ct. App. 2009) ...................................................................7

*Zimmerman v. Corbett*,
    873 F.3d 414 (3d Cir. 2017)................................................................................5

**STATUTES**

CAL. CIV. CODE § 1021 ...................................................................................5

CAL. CIV. CODE § 1636 ...................................................................................9

CAL. CIV. CODE § 1639 ...................................................................................7

CAL. CIV. CODE § 1644 ...................................................................................7

CAL. CIV. CODE § 1717 ............................................................................ *passim*

**RULES**

FED. R. CIV. P.  12(b)(6)..................................................................................5

FED. R. CIV. P. 12(c).............................................................................1, 5, 16

Defendants Countrywide Financial Corporation, Countrywide Home Loans, Inc. ("CHL"), and Bank of America, N.A. ("BANA"), in its own capacity and as successor by July 1, 2011 *de jure* merger to BAC Home Loans Servicing, LP (f/k/a Countrywide Home Loans Servicing, LP) (collectively, "Defendants"), respectfully submit this brief in support of their motion, pursuant to Federal Rule of Civil Procedure 12(c), for judgment on the pleadings that Plaintiff Spencer Savings Bank, S.L.A. ("Spencer") is not entitled to attorneys' fees under the Mortgage Loan Purchase and Servicing Agreement ("MLPSA" or "Agreement") at issue in this action.

## PRELIMINARY STATEMENT

California law, which governs Spencer's claims in this action pursuant to the terms of the MLPSA,[1] precludes Spencer from recovering its attorneys' fees from Defendants in this action. In its Complaint, Spencer invokes the indemnification provision set forth in § 6.01 to allege that the MLPSA authorizes this recovery. But the plain language of that section contains no language expressly authorizing the recovery of fees to enforce the agreement or otherwise awarding fees to the prevailing party in this action. Moreover, a significant body of California authority supports a finding that the language of § 6.01 does not work as a prevailing party attorneys' fee provision but, rather, only permits the recovery of fees incidental to the contract. As a result, Spencer fails to state a claim under which relief can be granted, and the Court should grant Defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

## FACTUAL BACKGROUND

### A.    The Mortgage Loan Purchase and Servicing Agreement ("MLPSA")

In 2005, Spencer and CHL entered into the MLPSA, which sets forth the terms and conditions for Spencer to purchase mortgage loans from CHL. From 2005 to 2008, Spencer

---

[1]    *See* MLPSA § 8.09 ("Governing Law"); ECF No. 42 at 5 (noting that "the parties do not contest the applicability of this [choice of law] provision").

purchased a portfolio of 130 mortgage loans from CHL and, at the time Spencer filed its Complaint (ECF No. 1-2), 99 were alleged to still be active. (Compl. ¶¶ 2, 51.) Additionally, under the MLPSA, Spencer hired CHL (and later BANA) to service the loans for a fee. (*Id.* ¶¶ 51-52; MLPSA at 1.) The MLPSA imposed servicing-related duties on CHL (and later BANA), including: (1) making reasonable efforts to collect loan payments (Compl. ¶ 53; MLPSA § 4.02); (2) using reasonable efforts to foreclose upon properties as to which no satisfactory arrangements could be made for collection of delinquent payments (Compl. ¶ 53; MLPSA § 4.03); and (3) using reasonable efforts to realize upon defaulted loans, taking into account, among other things, the timing of foreclosure proceedings (Compl. ¶ 53; MLPSA § 4.03). Given the nature of the transaction (purchase of mortgage loans) and servicing-related duties, the MLPSA thus contemplated that the parties might incur legal costs incidental to those duties.

For example, with respect to foreclosure, the MLPSA authorizes Countrywide to reimburse itself all reasonable and necessary "out of pocket" costs and expenses incurred in the performance of its servicing obligations, including in prosecuting foreclosure proceedings for the benefit of Spencer. The fees and costs of foreclosure counsel are paid for, ultimately, through a reduction in the proceeds Spencer receives from any property sale. Section 6.01 ("Additional Indemnification by Countrywide") provides a vehicle for Spencer to recover those underlying fees and costs if certain failures by Countrywide rendered them unreasonable, providing that:

> Countrywide shall indemnify [Spencer] and hold it harmless against any and all claims, losses, damages, penalties, fines, forfeitures, reasonable and necessary attorneys' fees and related costs, judgments, and any other costs, fees and expenses that [Spencer] may sustain in any way related to the failure of Countrywide to perform its obligations hereunder including its obligations to service and administer the Mortgage Loans in compliance with the terms of this Agreement. . . .

MLPSA § 6.01.

In addition to prosecuting foreclosure proceedings, § 6.02 ("Third-Party Claims") authorizes Countrywide to assume the defense of any claims brought by third parties with respect to the MLPSA or underlying mortgage loans. Spencer agreed to reimburse Countrywide for the costs of defense (including attorneys' fees) *unless* a breach by Countrywide caused the third party action. (*Id.* § 6.02.) In that case, the MLPSA shifts the cost of defense to Countrywide pursuant to the indemnification provisions of § 6.01 ("Additional Indemnification by Countrywide"). (*Id.* § 6.01.) But if Countrywide's actions (or inactions) were taken (or omitted) upon Spencer's instruction, or otherwise resulted from Spencer's failure to perform its own obligations, then Spencer remains responsible for the costs (including attorneys' fees). (*Id.*) In this manner, the MLPSA shifts the responsibility for costs (including attorneys' fees), which are elements of indemnified loss. It contains no express provision authorizing the recovery of attorneys' fees in an action between the parties to "enforce" the MLPSA or otherwise awarding attorneys' fees to the "prevailing party" in such a dispute, or words to that effect.

### B. Spencer's Complaint and Claim for Attorneys' Fees

Spencer alleges that, in May 2012, it became readily apparent that Defendants had breached their obligations under the MLPSA, and Spencer purported to terminate the agreement in June of that same year. (Compl. ¶¶ 104, 106.) Nearly two years later, in March 2014, after conducting what Spencer describes as "an exhaustive review of the subject loan files," Spencer demanded that Defendants "repurchase the referenced delinquent loans and reimburse Spencer all consequential damages flowing from BofA's breach of the Agreement in an amount exceeding $10,841,252." (*Id.* ¶ 107.) Two months later, Spencer filed its Complaint, which Defendants timely removed to this Court. Spencer alleges that Defendants breached their servicing obligations under the MLPSA and asserted the following four counts: (1) breach of contract; (2) indemnification; (3) alter ego

and successor liability; and (4) injunctive relief requiring BANA to repurchase the 42 loans listed in the Complaint.

Subsequently, Defendants moved to dismiss Counts I and IV of the Complaint (ECF No. 11), arguing that the MLPSA does not permit Spencer to seek repurchase as a remedy for an alleged breach of CHL's servicing obligations, as the Agreement expressly provides for repurchase only in the event of a breach of certain representations or warranties.  The Court properly dismissed the repurchase claim (Count IV) in June 2015 and limited Spencer to the indemnification remedy in the MLPSA.  (ECF No. 42 at 8.)  In reaching this conclusion, the Court was not required to, and did not, reach any holding as to the scope of § 6.01; it merely concluded that "damages [are] the only remedy available" to Spencer for an alleged servicing breach.  (*Id.*)

In November 2016, less than one month before the close of discovery, Spencer sought leave to file a First Amended Complaint, thereby attempting to assert a claim for fraud and punitive damages.  Defendants opposed the request, including because Spencer had unreasonably delayed in seeking to add a futile claim, which Defendants also regarded as an improper attempt to expand the remedies afforded by the MLPSA and circumvent the Court's June 2015 order dismissing the repurchase claim.  (ECF No. 83.)  In February 2017, the Court denied Spencer's Motion to File an Amended Complaint.  (ECF Nos. 93, 94.)  Having twice failed to expand its possible damages beyond the limited remedies permitted by the MLPSA for a servicing breach, Spencer now seeks to recover its attorneys' fees—incurred in pursuing this action against Defendants—as a significant, and perhaps the single largest, element of its alleged economic harm.  (Compl. ¶ 114.) Defendants bring this motion for judgment on the pleadings that, as a matter of law, the MLPSA does not authorize the recovery of attorneys' fees by the prevailing party in this action.

**PLEADING STANDARD**

Rule 12(c) of the Federal Rules of Civil Procedure provides that "a party may move for judgment on the pleadings" after the pleadings are closed.  FED. R. CIV. P. 12(c).  "A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion."  *Revell v. Port Auth. of N.Y., N.J.*, 598 F.3d 128, 134 (3d Cir. 2010).  Thus, a Rule 12(c) motion should be granted "if the movant establishes that 'there are no material issues of fact, and he is entitled to judgment as a matter of law.'"  *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017) (quoting *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005)).

**ARGUMENT**

**A.     Legal Standards for Recovery of Attorneys' Fees**

California law, which governs Spencer's claims in this action, has long followed the "American Rule" that the prevailing party may not recover attorneys' fees as costs or otherwise. *See Musaelian v. Adams*, 198 P.3d 560, 562 (Cal. 2009) ("California follows the 'American rule,' under which each party to a lawsuit ordinarily must pay his or her own attorney fees.").  This default rule can only be overcome by statute or by contract.

California Civil Code § 1021 provides that "[e]xcept as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys . . . is left to the agreement, express or implied, of the parties."  Section 1021 thus allows the parties to authorize the recovery of attorneys' fees and delineate the scope of that recovery by the agreement's terms. CAL. CIV. CODE § 1021; *Brown Bark III, L.P. v. Haver*, 162 Cal. Rptr. 3d 9, 16 (Ct. App. 2013). With respect to breach of contract actions specifically, California Civil Code § 1717 permits the recovery of attorney's fees by either party "[i]n any action on a contract, where the contract *specifically provides* that attorney's fees and costs, which are incurred to *enforce that contract*,

shall be awarded . . . to one of the parties." CAL. CIV. CODE § 1717 (emphases added); *see also 3250 Wilshire Blvd. Bldg. v. W.R. Grace & Co.*, 990 F.2d 487, 489 (9th Cir. 1993) (provision authorizing the recovery of attorney's fees by "the prevailing party" in "any suit or other proceeding with respect to the subject matter or enforcement of [the] Agreement" held broad enough to cover both tort and contract actions directed at enforcing the terms of the agreement).

Against this backdrop, Spencer alleges that § 6.01 of the MLPSA authorizes Spencer to recover its attorneys' fees incurred in this action against Defendants for their alleged servicing breach. (Compl. ¶ 115; Prayer for Relief.) For the reasons set forth below, it does not. But *even if* the Court finds that § 6.01 authorizes the recovery of attorneys' fees, California law requires the further finding that the provision is reciprocal. *See* CAL. CIV. CODE § 1717; *Brown Bark III, L.P.*, 162 Cal. Rptr. 3d at 16 ("To ensure mutuality of remedy, however, section 1717 makes an attorney fee provision reciprocal even if it would otherwise be unilateral either by its terms or in its effect."). As a matter of law, the provision must be read as authorizing a fee award to whichever party "prevails." Because Spencer has already lost its major claim for relief (repurchase of the subject loans), any recovery of attorneys' fees is discretionary, at best. And a victory by Defendants would result in Spencer paying a fee award.

**B.    The Plain Language of § 6.01 Does Not Expressly Authorize the Recovery of Attorneys' Fees in Actions to Enforce the Contract**

Section 6.01 of the MLPSA ("Additional Indemnification by Countrywide") provides as follows:

> Countrywide shall indemnify [Spencer] and hold it harmless against any and all claims, losses, damages, penalties, fines, forfeitures, reasonable and necessary attorneys' fees and related costs, judgments, and any other costs, fees and expenses that [Spencer] may sustain in any way related to the failure of Countrywide to perform its obligations hereunder including its obligations to service and administer the Mortgage Loans in compliance with the terms of this Agreement. . . .

6

MLPSA § 6.01.  The basic goal in contract interpretation is to give effect to the parties' mutual intent at the time of contracting.  When a contract is reduced to writing, the parties' intention is determined from the writing alone, if possible.  CAL. CIV. CODE § 1639.  The words of a contract are to be understood in their ordinary and popular sense.  *Id.* § 1644.

Here, § 6.01 does not contain language expressly referring to litigation between the parties to "enforce" the agreement or to the recovery of fees by the "prevailing party."  The absence of such terms stands in contrast to more explicit provisions that courts have consistently interpreted to encompass breach of contract claims between the parties.  *See, e.g.*, *Hsu v. Abbara*, 891 P.2d 804, 806 (Cal. 1995) ("In any action between Broker, BUYER or SELLER arising out of this agreement, the prevailing party shall be entitled to reasonable attorney's fees and costs."); *Exxess Electronixx v. Heger Realty Corp.*, 64 Cal. App. 4th 698, 702–03 (1998) (contract provision applicable where "any Party or Broker brings an action or proceeding to enforce the terms hereof or declare rights hereunder" expressly awarded "reasonable attorney's fees" to the "Prevailing Party," which was itself a defined term in the contract); *Silver Creek, LLC v. BlackRock Realty Advisors, Inc.*, 93 Cal. Rptr. 3d 864, 867 (Ct. App. 2009) ("Specifically, the agreements provided that if any proceeding is brought in connection with the agreements that the prevailing party 'shall be entitled' to recover reasonable attorney's fees and that '[t]he parties intend this provision to be given the most liberal construction possible and to apply in any circumstances in which such party reasonably incurs expenses.'"); *Turner v. Schultz*, 96 Cal. Rptr. 3d 659, 662 (Ct. App. 2009) ("In the event any legal action or arbitration is commenced of any kind or character, to enforce the provisions of this Agreement or to obtain damages for breach thereof, the prevailing party in such action shall be entitled to all costs and reasonable attorney's fees incurred in connection with such action."); *Eden Twp. Healthcare Dist. v. Eden Med. Ctr.*, 162 Cal. Rptr. 3d 932, 940 (Ct. App.

2013) ("The prevailing party in any action or proceeding commenced in court for breach of this Agreement shall be entitled to its attorneys' fees, costs, and expenses of experts incurred in prosecuting or defending such action or proceeding.").  In each of the foregoing cases, the agreements between the parties articulated a clear intent to apply the relevant attorneys' fee provisions to actions between the parties to enforce the contract.  Although Spencer may attempt to argue that the parties had the same intent here,[2] the language of § 6.01 does not convey that meaning.

### C.      The Language of § 6.01 Is Akin to Indemnification Clauses, Which Must Specifically Provide for Attorneys' Fees in an Action on the Contract

A significant body of California case law supports a finding that the language of § 6.01 does not work as a prevailing party attorneys' fee provision but, rather, only permits the recovery of fees as items of indemnified loss.  Under California law, an indemnity provision must "specifically provide for attorney's fees *in an action on the contract*" or else such claims are not covered.  *Alki Partners, LP v. DB Fund Servs., LLC*, 209 Cal. Rptr. 3d 151, 171 (Ct. App. 2016) (emphasis added).  "Generally, indemnity is defined as an obligation of one party to pay or satisfy the loss or damage incurred by another party."  *Id.* at 170.  Where a contract contains an indemnity agreement, "[t]he extent of the duty to indemnify is determined from the contract."  *Myers Bldg. Indus., Ltd. v. Interface Tech., Inc.*, 17 Cal. Rptr. 2d 242, 253 (Ct. App. 1993), *as modified on denial of reh'g* (Mar. 26, 1993).  In interpreting indemnity agreements, California courts follow

---

[2]      The Court should reject any argument by Spencer that it negotiated, or bargained for, its ability to recover attorneys' fees in an action such as this.  In addition to being outside the pleadings and contract, any such argument would fail on the merits.  Spencer's witnesses have admitted that it (1) signed the MLPSA in the form presented by Countrywide; (2) had no communication with Countrywide about the language of § 6.01 regarding fees; (3) had no communication with Countrywide about adding a prevailing party attorneys' fees provision to the MLPSA; and (4) conducted no analysis of the MLPSA under California law.  *See, e.g.*, Ex. 1, Excerpt from the Deposition of John C. Duncan, p. 25-26, 57-58, 148-149; Ex. 2, Excerpt from the Deposition of Vincent Massa, p. 70.

the same basic rules that govern the interpretation of other contracts and attempt to "give effect to the mutual intention of the parties." *Alki Partners*, 209 Cal. Rptr. 3d at 171 (quoting CAL. CIV. CODE § 1636).

Of the linguistic and contextual clues that California courts consider in this inquiry, the "key indicator is an express reference to indemnification." *Id.* California courts recognize that indemnification provisions usually allow for the recovery of legal costs that are incidental to the agreement, such as "costs incurred defending actions by *third parties*, not attorney fees incurred in an action between parties to the contract." *Id.* (emphasis added). But the court will not expand the scope of the provision to cover attorneys' fees in an action between the parties "if the provision 'does not specifically provide for attorney's fees *in an action on the contract* . . . .'" *Id.* (quoting *Myers*, 17 Cal. Rptr. 2d at 242) (emphasis in original).

Here, by its terms, § 6.01 is an indemnification provision. The title of the section is "Additional Indemnification by Countrywide," and it states that "Countrywide shall *indemnify* [Spencer] and *hold it harmless*" against various claims, damages, and other losses. (MLPSA § 6.01 (emphases added).)[3] None of the language in § 6.01 "specifically provide[s] for attorney's fees *in an action on the contract*." *Alki Partners*, 209 Cal. Rptr. 3d at 171. Rather, "reasonable and necessary attorneys' fees" are included merely "as an item of loss" to be indemnified. *Carr Bus. Enters., Inc. v. City of Chowchilla*, 82 Cal. Rptr. 3d 128, 132 (Ct. App. 2008). Accordingly, Spencer cannot obtain attorneys' fees under § 6.01 of the Agreement for its breach of contract claims against Defendants.

---

[3]    The indemnification in § 6.01 is "[i]n addition to the indemnification provided in § 3.03(d)." (MLPSA § 6.01.) Section 3.03(d) of the Agreement is not at issue in this case, as Spencer does not allege the breach of any representation or warranty that would be subject to indemnification under that provision. (*See* ECF No. 42 at 8.)

D.     **California Courts Have Concluded that Virtually Identical Language Excludes Attorneys' Fees in Direct Actions on the Contract**

California courts have interpreted virtually identical language to cover attorneys' fees or legal expenses that are incidental to the agreement—not claims for breach of the underlying contract itself, thus further demonstrating that Spencer cannot recover attorneys' fees from Defendants here.  Section 6.01 indemnifies Spencer for losses it sustains that are "in any way related to *the failure of Countrywide to perform its obligations hereunder* including its obligations to service and administer the Mortgage Loans *in compliance with the terms of the Agreement*." (MLPSA § 6.01 (emphases added).)  But despite these references to obligations imposed by the MLPSA, California courts examining similar provisions have not interpreted them to cover direct breach of contract claims.

The recent decision by the California Court of Appeal in *Alki Partners* is instructive.  *See* 209 Cal. Rptr. 3d at 162–63.  There, a hedge fund sued its administrator for breach of the parties' written agreement and other claims, and lost.  *Id*.  The contract required the hedge fund to indemnify the administrator for losses, including attorneys' fees, "resulting in any way from the performance or non-performance of [the administrator's] duties hereunder." *Id.* at 172.  The trial court awarded attorneys' fees to the administrator under this provision, but the Court of Appeal held that this was error, explaining that the parties' agreement was "virtually identical" to provisions in two other cases in which courts had declined to award attorneys' fees.  *Id.* (citing *Carr*, 82 Cal. Rptr. 3d at 131; *Myers*, 17 Cal. Rptr. 2d at 257).  In the first of these two cases, which involved municipal improvements, the operative indemnity provision covered claims "arising out of the performance of the work."  *Carr*, 82 Cal. Rptr. 3d at 131.  In the second case, which also involved a construction project, claims "aris[ing] out of 'the performance of the contract'" fell under the indemnification clause.  *Myers*, 17 Cal. Rptr. 2d at 257.

In both of these cases, and in *Alki Partners*, California courts concluded that parties were not entitled to indemnification for attorneys' fees incurred in bringing breach of contract claims. Even though the indemnification language mentioned obligations under the relevant agreement, in each case, the court held that the provision only "authorize[d] fees as an expense of litigation that [the indemnitor] agreed to pay in an action brought *by another person* arising out of the performance of the contract." *Carr*, 82 Cal. Rptr. 3d at 134–35 (emphasis added).  Thus, "despite its reference to performance of the contract work," this type of indemnification provision does not allow recovery of attorneys' fees in an action on the contract under California law.  *Id.* at 20. Numerous decisions from California courts reach a similar result when analyzing similar contractual provisions.  *See, e.g.*, *Campbell v. Scripps Bank*, 78 Cal. App. 4th 1328, 1336–38 (2000) (provision covered losses "which arise, result from or relate to this escrow"); *Bldg. Maint. Serv. Co. v. AIL Sys., Inc.*, 55 Cal. App. 4th 1014, 1022 (1997) (provision covered certain losses "related in any way to this Order, or the services performed or goods delivered under this Order"); *Otis Elevator Co. v. Toda Constr. of Cal.*, 27 Cal. App. 4th 559 (1994) (provision covered certain losses "arising out of the performance of the work described herein"); *Hillman v. Leland E. Burns, Inc.*, 209 Cal. App. 3d 860, 865 (1989) (provision covered certain claims "arising out of or resulting from the performance of the Work"); *Meininger v. Larwin-N. Cal., Inc.*, 63 Cal. App. 3d 82, 84–85 (1976) (same, where provision covered certain losses "aris[ing] directly or indirectly from the performance of this Contract").

Section 6.01 is most akin to these provisions that California courts have interpreted to exclude attorneys' fees for direct actions on the contract.  Here, § 6.01 entitles Spencer to indemnification for various losses relating to "the failure of Countrywide to perform its obligations hereunder," including obligations to service loans in compliance with the Agreement.  (MLPSA

§ 6.01.)   But "despite its reference to performance of the contract work," § 6.01 does not contemplate indemnification of attorneys' fees in a breach of contract action like this one, as evidenced by *Alki Partners* and the authority cited above.   Accordingly, Spencer cannot obtain its attorneys' fees incurred in bringing this action, and Defendants' motion for judgment on the pleadings should be granted.

### E.   Section 6.01 Differs Materially from Provisions Held to Cover Breach of Contract Claims

The language of § 6.01 also differs materially from indemnification provisions that *have* been interpreted to cover breach claims under California law.   An indemnification clause may cover direct claims between the parties if it "unambiguously contemplate[s] an action *between the parties* to enforce" the relevant contract.   *Baldwin Builders v. Coast Plastering Corp.*, 24 Cal. Rptr. 3d 9, 13 (Ct. App. 2005) (emphasis in original).   In *Baldwin Builders*, for example, the court addressed standalone indemnity agreements between a developer and two subcontractors.   *Id.* at 11.   Each agreement specifically provided that the relevant subcontractor "shall pay all costs, including attorney's fees, incurred in enforcing this indemnity agreement."   *Id.*   This provision was in addition to a traditional indemnity clause, which required each subcontractor to indemnify the developer against claims "arising out of acts or omissions of Subcontractor in any way connected with the performance of the subcontract . . . unless due solely to [the developer's] negligence."   *Id.* (omission in original).   Thus, the indemnity agreements in *Baldwin Builders* provided—separate and apart from the standard indemnity clause covering claims brought by third parties—that the subcontractors would have to pay attorneys' fees in a breach of contract action filed by their

counterparty to the agreement.[4]  By contrast, no such provision appears in § 6.01 here.  Similarly, in *Dream Theater, Inc. v. Dream Theater*, 21 Cal. Rptr. 3d 322 (Ct. App. 2004), *as modified on denial of reh'g* (Dec. 28, 2004), the relevant provision explicitly indemnified the relevant party "against all losses 'whether or not arising out of third party Claims.'"  *Id.* at 329.  Again, this language is the opposite of § 6.01, which does not contain this express provision.

These cases and others show that California courts interpret indemnification provisions to cover breach of contract claims *only* where the contract unambiguously demonstrates the parties' intent to include direct claims.  As yet another example, a California appellate court observed that a provision covering loss that "arises out of or is in any way connected with the performance of work under this Subcontract"—similar to § 6.01 here—would not, on its own, entitle the parties to seek attorneys' fees for breach of contract claims.  *Continental Heller Corp. v. Amtech Mech. Servs., Inc.*, 53 Cal. App. 4th 500, 508 (1997) ("If this was the extent of the contract's provision for attorney fees, we would agree with Amtech that Continental is not entitled to attorney fees incurred in prosecuting this action for breach of the indemnity agreement.").  It was only because of a separate provision, requiring indemnification of losses and attorneys' fees incurred "on account of any breach of the aforesaid obligations and covenants, and any other provision or covenant of this Subcontract," that the court permitted the recovery of attorneys' fees in that case.  *Id.*  No such additional language appears in § 6.01, and Spencer cannot establish that it is entitled to recover attorneys' fees under this framework either.  As a result, the Court should grant Defendants' motion for judgment on the pleadings.

---

[4]      In fact, the court in *Baldwin* held that the attorneys' fee provisions in the relevant indemnity agreements were subject to the requirement of reciprocity under CAL. CIV. CODE § 1717(a).  *Id.* at 14.  Accordingly, even though the provisions stated that the subcontractors would have to pay the attorneys' fees of the developer, the court held that the developer may have to pay the attorneys' fees of the subcontractors as prevailing parties.  *Id.* at 14–16.

**F.      Even if the Court Determined that § 6.01 Authorized the Recovery of Fees Here, the Recovery Is Reciprocal and Constrained by California Law**

Finally, even if the Court finds that § 6.01 authorizes the recovery of fees here, California

law requires the further finding that the recovery is reciprocal under California Civil Code § 1717.

As the California Supreme Court has explained, the primary purpose of this statute is "to ensure

mutuality of remedy for attorney fee claims under contractual attorney fee provisions."  *Santisas*

*v. Goodin*, 951 P.2d 399, 406 (Cal. 1998).  Section 1717 achieves this purpose by making "an

otherwise unilateral right reciprocal . . . when the contract provides the right to one party but not

to the other." *Id*. (internal citation and quotation omitted).  In this situation, the effect of the statute

is to "allow recovery of attorney fees by whichever contracting party prevails, whether he or she

is the party specified in the contract or not.'" *Id*. (quoting CAL. CIV. CODE § 1717(a)); *see also*

*Scott Co. of Cal. v. Blount, Inc.*, 20 Cal. 4th 1109 (1999) ("On its face, the attorney fees provision

is unilateral, giving only defendant and not plaintiff a right to attorney fees.  Section 1717,

however, renders the provision mutual, giving either plaintiff or defendant, if a prevailing party, a

right to attorney fees on any claims based on the contract."); *Cal.-Am. Water Co. v. Marina Coast*

*Water Dist.*, 227 Cal. Rptr. 3d 110, 115 (Ct. App. 2017), *review denied* (Feb. 28, 2018) (same).

To recover attorneys' fees pursuant to a contractual provision under § 1717, the moving

party must be able to show that: (1) the underlying contract authorizes such fees, (2) the moving

party is the prevailing party, and (3) the attorneys' fees incurred are reasonable.[5]  "When a party

obtains a simple, unqualified victory by completely prevailing on or defeating all contract claims

in the action and the contract contains a provision for attorney fees, section 1717 entitles the

---

[5]       In determining whether fees are reasonable, the trial court has broad discretion to consider various factors, including "the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case."  *PLCM Grp. v. Drexler*, 997 P.2d 511, 519 (Cal. 2000), *as modified* (June 2, 2000).

successful party to recover reasonable attorney fees incurred in prosecution or defense of those claims." *Scott Co. of Cal.*, 20 Cal. 4th at 1109.  However, if neither party achieves a "complete victory on all the contract claims," the trial court has discretion "to determine which party prevailed on the contract or whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees." *Id.*  To determine whether a party prevailed, "the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources." *Id.*

Spencer's potential recovery is thus constrained by California law and the emerging record thus far.  Far from a "simple, unqualified victory," Spencer has lost its major litigation objective through the denial of its repurchase claim.  And a significant number of the loans Spencer identified in the Complaint are performing and current or paid off, thus negating Spencer's contract claims as to those loans.  Even if Spencer later obtains a partial victory, the Court has broad discretion to decide that *neither* party truly prevailed.  *See, e.g.*, *Hilltop Inv. Assocs. v. Leon*, 33 Cal. Rptr. 2d 552, 555–56 (Ct. App. 1994) (affirming denial of attorneys' fee award where the "result was a draw") (citing *Kytasty v. Godwin*, 102 Cal. App. 3d 762, 774 (1980) (affirming denial of attorneys' fee award where "[t]he judgment as well as this opinion must be considered good news and bad news to each of the parties")); *Berkla v. Corel Corp.*, 302 F.3d 909, 920 (9th Cir. 2002) (affirming denial of attorneys' fees where plaintiff obtained only a fraction of the economic relief sought through his breach of contract claim; "a court is entitled to look at more than the issue of liability in determining prevailing party status, and to evaluate litigation success in light of the party's overall demands and objectives"); *see also Marina Pacifica Homeowners Ass'n v. S. Cal. Fin. Corp.*, 228 Cal. Rptr. 3d 799, 809 (Ct. App. 2018), *review filed* (Mar. 16, 2018) (affirming

denial of attorneys' fee award where party established a breach of the relevant contract, but recovered only a portion of the damages it sought). And even if a party prevails sufficiently to justify an award, the fees must be reasonably incurred. *PLCM Grp.*, 997 P.2d at 519.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court (i) grant judgment on the pleadings, pursuant to Rule 12(c), that Spencer is not entitled to its reasonable attorneys' fees incurred in this action; and (ii) grant Defendants such other relief as the Court deems just and proper.

WINSTON & STRAWN LLP
*Attorneys for Defendants*
*Countrywide Financial Corporation, Countrywide*
*Home Loans, Inc., and Bank of America, N.A., in its*
*own capacity and as successor by July 1, 2011* de
jure *merger to BAC Home Loans Servicing, LP*
*(f/k/a Countrywide Home Loans Servicing, LP)*

By:      */s/ James S. Richter*
        James S. Richter
        jrichter@winston.com

Dated: April 20, 2018

**OF COUNSEL**:
Luke A. Connelly
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
(212) 294-6700

Joanna C. Wade
Stacie C. Knight
WINSTON & STRAWN LLP
100 North Tryon Street
Charlotte, North Carolina 28202
(704) 350-7700