**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

—————————————————————   x
                                                                        :
SPENCER SAVINGS BANK, S.L.A., a mutual   :
savings and loan association,                            :
                                                                        :
                                        Plaintiff,          :   Civil Action No. 14-cv-04633-KSH-CLW
v.                                                                  :
                                                                        :   Oral Argument Requested
BANK OF AMERICA CORPORATION,      :
successor to Countrywide Financial Corporation, :
COUNTRYWIDE FINANCIAL                     :
CORPORATION, COUNTRYWIDE HOME   :
LOANS, INC., COUNTRYWIDE HOME       :
SERVICING, LP; BANK OF AMERICA, N.A.  :
and BAC HOME LOAN SERVICING, LP,     :
                                                                        :
                                        Defendants.       :
—————————————————————   x

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

---

**CHAITMAN LLP**
115 Fairview Road
Frenchtown, New Jersey 08825
(888) 759-1114
Helen Davis Chaitman
Suzan Arden (pro hac vice)
Agatha Cole (pro hac vice)

*Attorneys for Spencer Savings Bank, S.L.A.*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ...................................................................................................................... 3

I.   DEFENDANTS HAVE CONCEDED THAT SECTION 6.01 APPLIES TO SPENCER'S CLAIMS AND ARE ESTOPPED FROM CHANGING THEIR POSITION NOW ........................................................................ 6

II.  THE INDEMNIFICATION DEFENDANTS AGREED TO PROVIDE PURSUANT TO MLPSA SECTION 6.01 INCLUDES ATTORNEYS' FEES ................................................................................................................... 10

    A.  The Terms of the MLPSA Provide for Indemnification of Direct Claims ......................................................................................................... 15

    B.  Indemnification is Provided for Throughout the MLPSA ....................... 20

III. THE INDEMNIFICATION PROVISION AT SECTION 6.01 IS NOT RECIPROCAL ................................................................................................... 22

CONCLUSION ........................................................................................................................ 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alki Partners LP v. DB Fund Services, LLC*,
    4 Cal. App. 5th 574, 209 Cal. Rptr. 3d 151 (Cal. App. 4th Dist. 2016) ......................8, 19, 20

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
    7 Cal.4th 503, 28 Cal.Rptr.2d 475, 869 P.2d 454 (Cal. 1994).................................................20

*Atari Corp. v. Ernst & Whinney*,
    981 F.2d 1025 (9th Cir.1992) ........................................................................................15, 16

*Aurora Commercial Corp. v. Approved Funding Corp.*,
    13-CV-230 (RPP), 2014 WL 1386633 (S.D.N.Y. Apr. 9, 2014)............................................11

*Baldwin Builders v. Coast Plastering Corp.*,
    125 Cal. App. 4th 1339, 24 Cal. Rptr. 3d 9 (Cal. App. 4th Dist. 2005) ................................18

*Bldg. Maint. Serv. Co. v. AIL Sys., Inc.*,
    55 Cal. App. 4th 1014, 64 Cal. Rptr. 2d 353 (Cal. App. 2d Dist. 1997)................................17

*Boghos v. Certain Underwriters at Lloyd's of London*,
    36 Cal. 4th 495, 115 P.3d 68 (Cal. 2005) ..............................................................................10

*Civic Ctr. Drive Apartments Ltd. Partn. v. S.W. Bell Video Services*,
    295 F. Supp. 2d 1091 (N.D. Cal. 2003)..................................................................................20

*Continental Heller Corp. v. Amtech Mech. Servs., Inc.*,
    53 Cal. App. 4th 500, 61 Cal. Rptr. 2d 668 (Cal. App. 4th Dist. 1997) .....................13, 14, 17

*In re Contl. Airlines, Inc.*,
    279 F.3d 226 (3d Cir. 2002)....................................................................................................10

*Davis v. Wakelee*,
    156 U.S. 680 (1895)..................................................................................................................7

*DLJ Mortg. Capital, Inc. v. Fairmont Funding*, Ltd.,
    2008 N.Y. Slip Op. 30287(U), 2008 WL 347767 (N.Y. Sup. Ct. Jan. 28, 2008)........11, 12, 13

*DLJ Mortgage Capital, Inc. v. Sunset Direct Lending, LLC*,
    07-CV-1418 (HB/THK), 2008 WL 4489786 (S.D.N.Y. Oct. 6, 2008) ............................11, 12

*Dream Theater, Inc. v. Dream Theater*,
    124 Cal. App. 4th 547, 21 Cal. Rptr. 3d 322 (Cal. App. 4th Dist. 2004) .........................13, 15

ii

*DuFour v. Allen*,
   14-CV-05616, 2017 WL 1433303 (C.D. Cal. Apr. 20, 2017) .................................................13

*Eden Twp. Healthcare Dist. v. Eden Med. Ctr.*,
   220 Cal. App. 4th 418, 162 Cal. Rptr. 3d 932 (Cal. App. 1st Dist. 2013) .............................19

*Edwards v. Arthur Andersen LLP*,
   44 Cal. 4th 937, 189 P.3d 285 (Cal. 2008) ...............................................................................9

*Eichman v. Fotomat Corp.*,
   880 F.2d 149 (9th Cir. 1989) ....................................................................................................10

*Exxess Electronixx v. Heger Realty Corp.*,
   64 Cal. App. 4th 698, 75 Cal. Rptr. 2d 376 (Cal. App. 2d Dist. 1998) ............................18, 22

*F.T.C. v. EDebitPay, LLC*,
   695 F.3d 938 (9th Cir. 2012) ......................................................................................................9

*Fed. Agri. Mortg. Corp. v. It's A Jungle Out There Inc.*,
   C 03-3721 BZ, 2006 WL 1305207 (N.D. Cal. May 10, 2006) ..................................................22

*G.P.P., Inc. v. Guardian Protec. Products, Inc.*,
   15-CV-00321(SKO), 2017 WL 4277589 (E.D. Cal. Sept. 27, 2017) .......................................10

*GAP, INC., Pl. and Respt., v. APEX XPRESS, INC., Def. and Appellant.*,
   A146176, 2017 WL 2569914 (Cal. App. 1st Dist. June 14, 2017.) .........................................18

*Hillman v. Leland E. Burns, Inc.*,
   209 Cal. App. 3d 860, 257 Cal. Rptr. 535 (Cal. App. 1st Dist. 1989) ....................................18

*Hot Rods, LLC v. Northrop Grumman Sys. Corp.*,
   242 Cal. App. 4th 1166, 196 Cal. Rptr. 3d 53 (Cal. App. 4th Dist. 2015) .............................13

*Hsu v. Abbara*,
   9 Cal. 4th 863, 891 P.2d 804 (Cal. 1995) ...............................................................................18

*Laboratory Co. v. Binder*,
   603 Fed. Appx. 618 (9th Cir. 2015) .........................................................................................13

*Lehman Bros. Holdings v. 1st New England Mortg. Corp.*,
   09-CV-11082 (GAO), 2012 WL 3984413 (D. Mass. Sept. 12, 2012) ...............................11, 12

*LaSalle Bank National Ass'n. ex rel Lewnnar Partners, Inc. v. Capco American Securitization Corp.*,
   02-CV-9916 (RLC), 2005 WL 3046292 (S.D.N.Y. Nov. 14, 2005) .........................................11

*Monster, LLC v. Super. Ct.*,
   12 Cal. App. 5th 1214, 219 Cal. Rptr. 3d 814 (Cal. App. 2d Dist. 2017) ..............................13

*Mt. Air Enterprises, LLC v. Sundowner Towers*, LLC,
    3 Cal. 5th 744, 398 P.3d 556 (Cal. 2017) ............................................................15

*Music Group Macao Commercial Offshore Ltd. v. Foote*,
    No. 14-CV-03078 (JSC), 2015 WL 3882448 (N.D. Cal. June 23, 2015).................14

*Myers Bldg. Industries, Ltd. v. Interface Tech., Inc.*,
    13 Cal. App. 4th 949, 17 Cal. Rptr. 2d 242 (Cal. App. 2d Dist.1993).........................14, 18, 22

*New Hampshire v. Maine*,
    532 U.S. 742 (2001).......................................................................................7, 8

*Otis Elevator Co. v. Toda Constr. of Cal.*,
    27 Cal. App. 4th 559, 32 Cal. Rptr. 2d 404 (Cal. App. 6th Dist. 1994) ....................18

*Pegram v. Herdrich,*
    530 U.S. 211 (2000)............................................................................................8

*Planned Protective Services, Inc. v. Gorton,*
    200 Cal. App. 3d 1, 245 Cal. Rptr. 790 (Cal. App. 4th Dist. 1988)...........................8

*PNC Fin. Services Group, Inc. v. Houston Cas. Co.*,
    647 Fed. Appx. 112 (3d Cir. 2016).........................................................................9

*Residential Funding Co., LLC v. Terrace Mortg. Co.*,
    725 F.3d 910 (8th Cir. 2013) ..............................................................................11

*Ret. Hous. Found. v. Cain Brothers & Co.*,
    B239439, 2013 WL 6858251 (Cal. App. 2d Dist. Dec. 30, 2013), *as modified*
    *on denial of reh'g* (Jan. 29, 2014)......................................................................16

*Rideau v. Stewart Title of California, Inc*.,
    235 Cal. App. 4th 1286, 185 Cal. Rptr. 3d 887 (Cal. App. 4th Dist. 2015),
    *reh'g denied* (Apr. 29, 2015), *review denied* (July 15, 2015)................................14

*Rissetto v. Plumbers & Steamfitters Local 343*,
    94 F.3d 597 (9th Cir. 1996) .................................................................................8

*Rossmoor Sanitation, Inc. v. Pylon, Inc.*,
    13 Cal.3d 622, 119 Cal.Rptr. 449 (Cal. 1975) .....................................................15

*Scarano v. C. R. Co. of N. J.*,
    203 F.2d 510 (3d Cir. 1953)..................................................................................7

*SCIE LLC v. XL Reinsurance Am., Inc.*,
    397 Fed. Appx. 348 (9th Cir. 2010)......................................................................13

*Silver Creek, LLC v. BlackRock Realty Advisors*, Inc.,
    173 Cal. App. 4th 1533, 93 Cal. Rptr. 3d 864 (Cal. App. 4th Dist. 2009) .............................18

*In re Transact, Inc.*,
    13-CV-1312 (MWF), 2014 WL 3888230 (C.D. Cal. Aug. 6, 2014) .......................................20

*Turner v. Schultz*,
    175 Cal. App. 4th 974, 96 Cal. Rptr. 3d 659 (Cal. App. 1st Dist. 2009)................................19

*Wells Fargo Bank Minnesota v. Wachovia Bank*,
    02-CV-1945, 2004 WL 2826773 (N.D. Tex. Dec. 9, 2004)...................................................11

*Yang Ming Marine v. Okamoto Freighters Ltd.*
    259 F.3d 1086 (9th Cir.2001) .........................................................................................15, 16

*Zalkind v. Ceradyne, Inc.*,
    194 Cal. App. 4th 1010 (Cal. App. 4th Dist., 2011) .............................................13, 14, 15, 16

**Statutes**

Cal. Civ. Code § 1636-1639 ...........................................................................................15

Cal. Civ. Code § 1641 ...........................................................................................9, 15, 20

Cal. Civ. Code § 1717...............................................................................................22, 23

Cal. Civ. Code § 2772....................................................................................................15

Cal. Civ. Code § 3300....................................................................................................20

Cal. Civ. Code § 3358....................................................................................................20

Cal. Civ. Code § 3541......................................................................................................9

Plaintiff Spencer Savings Bank, S.L.A. ("Spencer") submits this memorandum of law in opposition to the motion of Defendant Bank of America, N.A. ("BofA"), in its own capacity and as successor to Countrywide Financial Corporation, Countrywide Home Loans, Inc. ("Countrywide" or "CHL"), and BAC Home Loans Servicing, LP (f/k/a Countrywide Home Loans Servicing, LP) ("BofA" or "Defendants") for a judgment on the pleadings pursuant to Fed. R. Civ. P. 12 (c). As set forth herein, Defendants' motion should be denied in its entirety and this Court should rule that the agreement between the parties provides for Spencer to recover its attorneys' fees.

## PRELIMINARY STATEMENT

Spencer is entitled to recover the attorneys' fees it incurred in this action pursuant to Section 6.01 of the Mortgage Loan Purchase and Servicing Agreement (the "MLPSA"). As Defendants have already conceded, Section 6.01 provides a broad contractual remedy for the recovery of losses caused by Defendants' failure to fulfill their contractual obligations to service the loans. This remedy explicitly includes attorneys' fees:

> Countrywide shall indemnify the Purchaser and hold it harmless against any and all claims, losses, damages, penalties, fines, forfeitures, **reasonable and necessary attorneys' fee**s and related costs, judgments, and any other costs, fees and expenses that the Purchaser may sustain **in any way related to the failure of Countrywide to perform its obligations hereunder including its obligations to service and administer the Mortgage Loans in compliance with the terms of this Agreement.**

MLPSA § 6.01, (emphasis added), **Chaitman Dec.[1] Exh. 1.**

Contrary to Defendants' argument, Spencer does not contend that this is a prevailing party clause. Nor does it need to be. Under California law,[2] a prevailing party clause is not the only way a party can recover its attorneys' fees for a breach of contract claim. It can recover its

---

[1] The declaration of Helen Davis Chaitman, executed on May 25, 2018, is hereinafter referred to as "Chaitman Dec."
[2] The parties do not dispute that California law applies to the interpretation of the MLPSA.

attorneys' fees as an element of losses incurred by the breach of contract pursuant to a broad indemnification clause.  Section 6.01 is such a clause.  It provides the remedy for any breach of Defendants' servicing obligations, explicitly including attorneys' fees as an element of the loss, whether or not that breach leads to a first party breach of contract claim, or just a third party claim.

When it suited their purposes, Defendants took this position themselves, and have thereby conceded that Spencer is entitled to recover its attorneys' fees under the MLPSA.  In their first motion to dismiss, filed in 2014, Defendants argued that Section 6.01 is a comprehensive indemnification clause that provides the remedy to Spencer if it has to sue Defendants for breaches of Defendants' servicing obligations (*e.g*., the "remedy for [Defendants'] purported breach of [their] servicing duties under the **MLPSA is indemnification for any losses caused by the breach. (See MLPSA § 6.01.)"** Def. Memorandum of Law on Motion to Dismiss[3] at 7, Doc # 11-1.  (emphasis added) Chaitman Dec. **Exh. 2**  This Court agreed, and dismissed Spencer's claim that Defendants must instead repurchase the loans.  Now that this position no longer helps Defendants, they attempt to reverse themselves and claim that Section 6.01 is actually intended to cover indemnification only for third party claims, not for direct claims of breach at all.  As a result, they argue that it simply cannot entitle Spencer to attorneys' fees.  It is well settled under California law that Defendants cannot take an advantage based on one position and then seek another based on its reverse.  Accordingly, Defendants are estopped from claiming that Section 6.01 covers only third party claims.

Further, even if they were not estopped, Defendants' attempt to construe Section 6.01 as a third party indemnification clause is contrary to the plain language of the provision and the structure of the MLPSA as a whole.  And, indeed, Defendants' position finds little support in

---

[3] Defs. 2014 Mem.

California law.  In fact, Section 6.01 is just one of a number of clauses that provide remedies to the parties for different types of breaches.  And as further evidence that Section 6.01 is not restricted to third party claims, a different section, Section 6.02, is explicitly entitled "Third Party Claims" and provides that Defendants will defend and indemnify Spencer when it is sued by a third party as a result of Defendants' breaches.  (MLPSA 6.03, Chaitman Dec**. Exh. 1**).

Finally, contrary to Defendants' claim that Spencer is now trying to "expand its damages," there is nothing new about Spencer's claim that it is entitled to recover its attorneys' fees.  It is based on the MLPSA and was properly pleaded as part of Count II, the substantive claim for indemnification, and incorporated into every other cause of action in the original Complaint.  Nor is it in any way surprising that Spencer's attorneys' fees have become more "significant" as this case has progressed towards trial.  This is an ordinary consequence of litigation, particularly in cases involving extensive discovery and pretrial proceedings.

This Court should deny Defendants' motion for a judgment on the pleadings in its entirety and allow Spencer to proceed with its claim for indemnification, including its attorneys' fees.

## **<u>BACKGROUND</u>**

Spencer is a New Jersey Savings and Loan Association.  On April 29, 2005, Spencer entered into the MLPSA, which set forth the terms of purchase for a series of residential mortgage loans that Spencer bought from Countrywide over the next two years.  These loans were not cut from the same cloth as the infamous subprime mortgages that Countrywide packaged and sold into toxic residential mortgage-backed securities ("RMBS") to large financial institutions all over the country.  Unlike those loans, Spencer performed due diligence on each of the mortgages that it purchased under the MLPSA in its entirety as a "whole loan."

In 2008, Countrywide was acquired by BofA, which assumed all of Countrywide's contractual rights and obligations under the MLPSA, either directly and/or through its various subsidiary entities.

The MLPSA

Although Spencer bought the loans as a whole, the MLPSA allowed Countrywide, and then Defendants, to retain the "servicing rights," meaning that Countrywide would collect payments and realize upon defaulted loans and would receive a fee throughout the repayment period on each loan for carrying out these duties on Spencer's behalf.  *See* "Servicing Compensation" MLPSA § 4.18.   Among other things, this arrangement meant that Spencer was entirely dependent on Defendants' good faith performance of their loan servicing obligations to timely recover its loan proceeds with interest.

As alleged in the Complaint, Defendants breached their contractual obligations to Spencer, *inter alia*, by failing to service the loans in accordance with the "prudent mortgage servicer" standard (MLPSA § 4.01), and by consistently violating most, if not all, of its substantive obligations imposed on the servicing agent under Articles IV and V of the MLPSA.  The original Complaint alleged four causes of action, as follows:

- **Count I ("Breach of the Agreement")** alleges that Defendants failed to properly service the loans in accordance with the standards and obligations set forth in the MLPSA;

- **Count II ("Indemnification")** expressly incorporates the indemnification clause at MLPSA 6.01 and alleges that Defendants are liable for "any and all claims, losses, damages, penalties, fines, forfeitures, *reasonable and necessary attorney's fees and related costs*, judgments, and any other costs, fees and expenses . . in any way related to the failure  . . . to perform its obligations . . . including its obligation to service [the loans] . . . in compliance with the terms of [the MLPSA];"

- **Count III ("Successor Liability and Alter Ego)** deals with successor liability issues that have since been dealt with pursuant to a joint stipulation between the parties; and

- **Count IV ("Injunctive Relief")** sought to have Defendants repurchase the loans, in light of the difficulty of assessing the monetary damages owing to Defendants' continuous and endemic breach of the servicing obligations set forth under the MLPSA.

On October 1, 2014, Defendants moved to dismiss Counts I and IV—the claims for breach of servicing standards and the claim for repurchase—, arguing that Spencer failed to state a claim for breach of the agreement and, even if it had, that it was not entitled to compel Defendants to repurchase the loans as a remedy.

Defendants claimed that they could only be compelled to repurchase the loans under Section 3.03 of the MLPSA, which provided a remedy only if Defendants violated the representations and warranties contained in the MLPSA.  Defendants claimed that Section 6.01 set forth the proper remedy for the claims of breach of the servicing standards alleged in Spencer's Complaint, and the text of Section 6.01 does not include repurchase as a remedy.  Chaitman Dec**.** **Exh. 2.**  Defendants did not move to dismiss Count II when they moved to dismiss Count IV, apparently realizing that it is disingenuous at best to argue (at least in the same brief) that Section 6.01 provides the remedy for breaches of the servicing standards and (as it does now) that it does not.  This Court denied Defendants' motion to dismiss Count I and dismissed Count IV in a written decision and order dated June 30, 2015.  Chaitman Dec. **Exh. 3.**  Thus, the remaining causes of action for trial are Counts I and II.[4]

---

[4]  On May 24, 2017, the parties entered into a joint stipulated agreement to defer all potential disputes over successor liability issues, pending the final judgment in this case.  *See* Joint Stipulation and Order of Deferral of Claims Against Bank of America Corporation (so ordered by Hon. Cathy Waldor, M.J., on June 12, 2017) (Doc 101).

## ARGUMENT

I.   **DEFENDANTS HAVE CONCEDED THAT SECTION 6.01 APPLIES TO SPENCER'S CLAIMS AND ARE ESTOPPED FROM CHANGING THEIR POSITION NOW**

The plain language of Section 6.01 of the MLPSA presents a comprehensive indemnity provision that provides a remedy to Spencer in the form of a claim for breach of contract where Defendants have violated their servicing obligations. By its terms, it explicitly allows for the recovery of attorneys' fees as a part of Spencer's overall losses arising "in any way" out of Defendants' breaches. It provides, in relevant part:

> Countrywide shall indemnify the Purchaser and hold it harmless against any and all claims, losses, damages, penalties, fines, forfeitures, *reasonable and necessary attorneys' fees* and related costs, judgments, and any other costs, fees and expenses that the Purchaser may sustain *in any way related to the failure of Countrywide to perform its obligations hereunder including its obligations to service and administer the Mortgage Loans in compliance with the terms of this Agreement.* . .

Chaitman Dec. **Exh. 1** at § 6.01 (emphasis added).

Defendants have conceded that Section 6.01 provides the remedy for Spencer's breach of contract claims in this case. In their motion to dismiss Spencer's claim for repurchase of the loans Countrywide sold to Spencer, Defendants took the position that Spencer's only "remedy for [Defendants'] purported breach of [their] servicing duties under the **MLPSA is indemnification for any losses caused by the breach. (See MLPSA § 6.01.)"** (emphasis added) Defs. 2014 Mem. p. 7, Chaitman Dec. **Exh. 2**. Thus, by Defendants' own admission, Section 6.01 is a first party indemnification clause, and is not merely a clause that provides indemnification for third party claims.

Now that they are trying to dismiss a different claim, Defendants take the entirely contradictory position that Section 6.01 does not, in fact, provide an indemnification remedy to Spencer for Defendants' breaches of their servicing obligations. Instead, Defendants now claim

that Section 6.01 applies only to indemnification for the losses Spencer incurs as a result of claims brought against Spencer by third parties that arise out of Defendants' breach of their servicing obligations.  *See, e.g.,* Defendants' Memorandum of Law on this motion[5] at 3 (MLPSA 6.01 merely "shifts the cost of defense to Countrywide" if "a breach by Countrywide caused the third party action"); Defs. 2018 Mem. at 6-8 (the language in MLPSA 6.01 is not specific enough to cover direct claims for indemnification arising from Defendants' breach of the servicing provisions in an action for breach of contract); Defs. 2018 Mem. at 9 ("indemnification clauses usually [only] allow for the recovery of . . . costs incurred defending actions by *third parties* . . ."); Defs. 2018 Mem. at 12 (MLPSA 6.01 is more akin to a  "standard indemnity clause covering claims brought by third parties"); Defs. 2018 Mem. at 13 (Section 6.01 is restricted to third party claims because it does not specify that it applies to all losses, "whether or not arising out of third party Claims.").

It is black letter law that a party may not assert a claim that is contrary to a position it has previously taken and prevailed upon in the same judicial proceeding.  As the Supreme Court of the United States has ruled:

> [w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position. . .

*New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Davis v. Wakelee,* 156 U.S. 680, 689 (1895) (internal quotation marks omitted)).  The purpose of this doctrine "is to protect the integrity of the judicial process, by prohibiting parties from deliberately changing positions according to the exigencies of the moment," *New Hampshire*, 532 U.S. at 749–50.  It "prevents parties from 'playing 'fast and loose with the courts'" *id.* at 750 (quoting *Scarano v. C. R. Co. of N. J.,* 203 F.2d 510, 513 (3d Cir. 1953)).  In practice, the doctrine of judicial estoppel also advances fundamental

---

[5]  Defs. 2018 Mem.

principles of justice and fairness; it embraces the simple notion that litigants should not be allowed to "gain an advantage . . . . on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." *New Hampshire v. Maine*, 532 U.S. at 749; *see also Pegram v. Herdrich*, 530 U.S. 211, 228 at fn. 8 (2000) ("Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.") (citing *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 605 (9th Cir. 1996)). Even in the case which Defendants rely upon most heavily, *Alki Partners LP v. DB Fund Services, LLC,* 4 Cal. App. 5th 574, 606, 209 Cal. Rptr. 3d 151, 175 (Cal. App. 4th Dist. 2016), the appellate court estopped the defendant from changing its position to contend that it was also seeking fees for the defense of third party claims, when it had argued in the trial court that it was not doing so. *Id.* at 175 (defendant "may not repudiate these representations now") (*citing Planned Protective Services, Inc. v. Gorton*, 200 Cal. App. 3d 1, 12-13, 245 Cal. Rptr. 790 (Cal. App. 4th Dist. 1988).

In their 2014 submission to this Court, Defendants repeatedly relied upon their acknowledgment that Section 6.01 entitles Spencer to a recovery of attorneys' fees: For example:

> [The] standard remedy for a breach of contract is expectation damages, which is the amount necessary to put the non-breaching party in as good a position as it would have been had the breaching party performed as promised. . . The MLPSA supplants this standard measure of contract damages by providing specifically for indemnification of any losses or damages caused by an actionable servicing breach. (*See* MLPSA § 6.01.)

*          *          *

> Spencer agreed in MLPSA Section 6.01 that its remedy for a breach of the MLPSA's servicing duties would be indemnification for its actual losses suffered as a result of the servicing breach. . . This provision is designed to compensate Spencer for its actual losses caused by any actionable breach of the servicing standard.

*          *          *

> If [Countrywide] breaches the serving standard, Spencer may seek to be indemnified for its actual losses caused by the breach. . . . Spencer bargained for and agreed to the precise remedy that would apply to a servicing breach: Indemnification (money damages) for its losses and damages.

*See* Defs. 2014 Mem., Chaitman Dec. **Exh. 2**, at 11, 4, and 1.

Not only did Defendants make this argument, they prevailed on it!  This Court dismissed Spencer's repurchase claim, Count IV of the Complaint, adopting Defendants' argument that the MLPSA's 'plain and unambiguous language' provides 'for indemnification in the event of a servicing breach.'"  Chaitman Dec. **Exh. 3** at 6.  The Court then held that Defendants would instead be "obligated to indemnify Spencer for [its] losses," pursuant to MLPSA § 6.01.  *Id.* at 8**.**

This Court cannot countenance Defendants' shift in position.  Having succeeded in dismissing Spencer's claim for repurchase based on a claim that the parties agreed that Section 6.01 provides the indemnification remedy for breaches such as the ones alleged in Spencer's complaint, Defendants must live with that interpretation now.

Further, the law does not support Defendants' argument that Section 6.01 may encompass indemnification for direct claims, but that the words "attorneys' fees" must be read out of the provision or that those words alone apply only to third party claims.  It is an elementary rule of construction that a court must give fair meaning to all of the terms of an agreement, and that a court may only read out provisions where their sense is incompatible with the whole.  Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."); *accord F.T.C. v. EDebitPay, LLC,* 695 F.3d 938, 944 (9th Cir. 2012). *See also* Cal. Civ. Code § 3541 ("An interpretation which gives effect is preferred to one which makes void."); *accord Edwards v. Arthur Andersen LLP,* 44 Cal. 4th 937, 954, 189 P.3d 285, 296 (Cal. 2008); *see also PNC Fin. Services Group, Inc. v.*

*Houston Cas. Co.,* 647 Fed. Appx. 112, 118 (3d Cir. 2016) ("Courts should not . . . distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity.") (internal citations and quotation marks omitted); *Boghos v. Certain Underwriters at Lloyd's of London,* 36 Cal. 4th 495, 503, 115 P.3d 68, 72 (Cal. 2005) ("The rule's effect, among other things, is to disfavor constructions of contractual provisions that would render other provisions surplusage.").

Finally, the law of the case doctrine precludes any reconsideration of this Court's prior decision regarding the proper scope and interpretation of Section 6.01. *See Eichman v. Fotomat Corp.*, 880 F.2d 149, 157 (9th Cir. 1989) ("The doctrine of law of the case encompasses a court's explicit decisions as well as those issues decided by necessary implications. . . The law of the case controls unless the first decision is clearly erroneous and would result in manifest injustice, an intervening change in the law has occurred, or the evidence on remand is substantially different.") (internal citations and quotation marks omitted); *G.P.P., Inc. v. Guardian Protec. Products, Inc.*, 15-CV-00321(SKO), 2017 WL 4277589, at *5, fn. 5 (E.D. Cal. Sept. 27, 2017) (explaining that a court's prior rulings concerning the scope of an agreement are law of the case and should not be revisited in subsequent filings); *see also In re Contl. Airlines, Inc.*, 279 F.3d 226, 233 (3d Cir. 2002) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.").

This Court should deny Defendants' motion in its entirety and hold that the MLPSA does entitle Spencer to recover its attorneys' fees as part of its damages in this action.

## II.   THE INDEMNIFICATION DEFENDANTS AGREED TO PROVIDE PURSUANT TO MLPSA SECTION 6.01 INCLUDES ATTORNEYS' FEES

Even if Defendants had not conceded in 2014 that Spencer is entitled to indemnification pursuant to Section 6.01, as they did when it was advantageous for them to do so, courts throughout the country have held that language such as this allows for the recovery of attorneys' fees in direct

claims. *See, e.g. Residential Funding Co., LLC v. Terrace Mortg. Co.*, 725 F.3d 910, 914-15 (8th Cir. 2013) (affirming grant of indemnification of attorneys' fees in a direct action where the clause granted indemnification from all losses including "without limitation, liabilities arising from (i) any act or failure to act, (ii) any breach of warranty, obligation or representation"); *Aurora Commercial Corp. v. Approved Funding Corp.*, 13-CV-230 (RPP), 2014 WL 1386633, at *5 (S.D.N.Y. Apr. 9, 2014) (finding that Aurora was "entitled under the contract to reasonable attorneys' fees" pursuant to the clause providing that "Seller shall indemnify Purchaser . . . against . . . court costs, reasonable attorney's fees, judgments, and any other costs."); *Lehman Bros. Holdings v. 1st New England Mortg. Corp.*, 09-CV-11082 (GAO), 2012 WL 3984413 (D. Mass. Sept. 12, 2012); *DLJ Mortgage Capital, Inc. v. Sunset Direct Lending, LLC*, 07-CV-1418 (HB/THK), 2008 WL 4489786 (S.D.N.Y. Oct. 6, 2008) ("DLJ Mortgage v. Sunset"); *DLJ Mortg. Capital, Inc. v. Fairmont Funding*, Ltd., 2008 N.Y. Slip Op. 30287(U), 2008 WL 347767 (Supreme Court, New York County Jan. 28, 2008) ("DLJ Mortgage v. Fairmont"); *Wells Fargo Bank Minnesota v. Wachovia Bank*, 02-CV-1945, 2004 WL 2826773 (N.D. Tex. Dec. 9, 2004) (claim for attorneys' fees properly pleaded in connection with alleged servicing breach); *see also LaSalle Bank National Ass'n. ex rel Lewnnar Partners, Inc. v. Capco American Securitization Corp.,* 02-CV-9916 (RLC), 2005 WL 3046292, at *6 (S.D.N.Y. Nov. 14, 2005) ("Unlike in cases where the contractual provision merely contemplated recovery of 'costs and expenses,' here the expenses mentioned are explicitly connected to the possibility of litigation, and are therefore a clear indication that the parties contemplated the recovery of attorney's fees in a suit to enforce the agreement.").

In *Lehman Bros.*, the court characterized essentially identical language as a basic risk-allocation provision that unequivocally allowed the plaintiff to recover its attorneys' fees in the

action.  *See Lehman Bros.* 2012 WL 3984413, at \*2 ("By their agreements, the parties were allocating the risk of loss.").  For the full text of the provisions, which do not appear in the decision itself, *see Lehman Bros. Holdings v. 1st New England.,* U.S. Dist. Mass. Case No. 1:09-cv-11082 (Doc #23-1, Page 26-27 of 46), Chaitman Dec. **Exh. 4** (indemnifying the purchaser for "all . . . losses, . . . reasonable attorneys' fees . . . that the Purchaser may sustain in any way related to or resulting from" a breach).  In *DLJ Mortgage v. Sunset,* the court relied on two essentially identical provisions to hold two defendants liable for the plaintiff's attorneys' fees.  Again, the full text of the provisions do not appear in the decision itself, and are set forth in *DLJ Mortgage v. Sunset Direct Lending, et al.*, S.D.N.Y. Case No. 1:07-cv-01418-HB-THK (Doc # 26-2, Page 39 of 42 and Doc # 26-5, Page 28 of 43), Chaitman Dec. **Exhs. 5 and 6** (both indemnifying the purchaser for "all . . . losses . . . legal fees . . . that the Purchaser may sustain in any way related to" a breach or, among other things, failure to fulfil obligations).

In *DLJ Mortgage v. Fairmont*, the language of the provision at issue was also substantially identical to the language here.  The defendant was required to indemnify the plaintiff against "any and all . . . losses . . . legal fees . . . that plaintiff 'may sustain in any way related to the failure of defendant to observe and perform its duties, obligations, covenants and agreements to service the Mortgage Loans' . . . [or] as a result of the breach of a representation or warranty.'"  The defendant made the same argument that Defendants make here, contending that the indemnification language was only intended to cover expenses incurred in litigation related to third party claims. The New York Supreme Court rejected that claim, holding that:

> [B]road indemnification clauses purporting to apply to 'any and all liability' have been construed as meaning what they say, by allowing them to cover 'any and all' liability on the part of the person being indemnified . . . Given the broad language in the subject clause[s], it is appropriate to find that . . . defendant must indemnify plaintiff for inter-party litigation, and that plaintiff has a viable claim for attorneys' fees.

*DLJ Mortgage v. Fairmont*, 2008 WL 347767.

Similarly, it is well settled that under California law, a party need not rely upon a "prevailing party" clause to recover its attorney fees. *Monster, LLC v. Super. Ct.*, 12 Cal. App. 5th 1214, 219 Cal. Rptr. 3d 814 (Cal. App. 2d Dist. 2017) (holding that attorneys' fees may be sought either as a prevailing party as incident to a judgment or as damages in the principal action). Where, as here, an indemnification provision is sufficiently broad, it applies to direct claims as well as to third party claims and courts will award attorneys' fees as an element of the plaintiff's overall losses. *See, e.g., Hot Rods, LLC v. Northrop Grumman Sys. Corp*., 242 Cal. App. 4th 1166, 196 Cal. Rptr. 3d 53 (Cal. App. 4th Dist. 2015) (indemnification provision broad enough to encompass both first and third party claims); *Zalkind v. Ceradyne, Inc.*, 194 Cal. App. 4th 1010, 1026 (Cal. App. 4th Dist., 2011); *Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 555, 21 Cal. Rptr. 3d 322 (Cal. App. 4th Dist. 2004) ("the term 'indemnity' encompasses any duty to pay for another's loss or damage and is not limited to reimbursement of third-party claims."); *Continental Heller Corp. v. Amtech Mech. Servs., Inc.,* 53 Cal. App. 4th 500, 61 Cal. Rptr. 2d 668 (Cal. App. 4th Dist. 1997) (same); *accord SCIE LLC v. XL Reinsurance Am., Inc.,* 397 Fed. Appx. 348, 351-352 (9th Cir. 2010)("the recovery of [attorneys'] fees in an action for breach" is perfectly consistent with California law where, as here, the parties unambiguously contemplated the prospect of an "action between the parties to enforce their agreement [] and expressly authorized. . . [the] recovery of fees in such an action.'"); *see also DuFour v. Allen,* 14-CV-05616 (CAS-SSX), 2017 WL 1433303, at *10 (C.D. Cal. Apr. 20, 2017) (enforcing right to recover attorneys' fees in direct litigation between parties to a contract which required indemnifying party to "defend, indemnify and hold Prosper harmless from and against all damages ... [and] claims, including legal costs and reasonable attorney's fees."); *Laboratory Co. v. Binder*, 603 Fed. Appx. 618, 618–19

(9th Cir. 2015) (finding that defendants agreed to "indemnify, defend, protect and hold harmless . . . from, against, and in respect of all Liabilities, losses, claims, damages . . . suffered, sustained, incurred or paid by *any* Buyer . . . on account of a misrepresentation by the Sellers" and thereby unambiguously contemplated the indemnified parties' right to recover repayment for litigation expenses in an action for a breach relating to such misrepresentations).

As the Appellate Court held in *Zalkind,* under California law, "a party wishing to narrow an indemnification clause to third party damage is obligated to limit the scope of the clause expressly . . . absent such express limitation, indemnification clauses may apply to damage suffered by the contracting parties themselves." *Zalkind*, 194 Cal. App. 4th at 1026; *accord Music Group Macao Commercial Offshore Ltd. v. Foote*, No. 14-CV-03078 (JSC), 2015 WL 3882448, at *13-14 (N.D. Cal. June 23, 2015). As discussed in more detail at II.A below, contrary to Defendants' claim, there is no requirement that the indemnification clause contain extra language to expand the meaning of the clause. And even if there were such a requirement, that language is present here.

Thus, in determining whether an indemnification provision covers direct claims or should be restricted to third party claims only, courts will first look to the plain language of the clause to determine whether it covers direct claims as well as third party claims, and then to the agreement as a whole. *Zalkind,* 94 Cal. App. 4th at 1022 ("We therefore look to the language of the Asset Purchase Agreement itself"); *Myers Bldg. Industries, Ltd. v. Interface Tech., Inc.,* 13 Cal. App. 4th 949, 968–69, 17 Cal. Rptr. 2d 242, 253–54 (Cal. App. 2d Dist.1993) ("The extent of the duty to indemnify is determined from the contract."); *see also Continental Heller,* 53 Cal. App. 4th at 504 ("In interpreting an express indemnity agreement, a court looks first to the words of the contract to determine the intended scope of the indemnity agreement); *accord Rideau v. Stewart Title of*

*California, Inc*., 235 Cal. App. 4th 1286, 1294, 185 Cal. Rptr. 3d 887, 892 (Cal. App. 4th Dist. 2015), *reh'g denied* (Apr. 29, 2015), *review denied* (July 15, 2015).

Here, both the plain language of Section 6.01 and the terms of the MLPSA as a whole demonstrate that Spencer may recover its attorneys' fees in this action.

### A.   The Terms of the MLPSA Provide for Indemnification of Direct Claims

The fundamental rules of contract interpretation are the same in California as everywhere else. *See Mt. Air Enterprises, LLC v. Sundowner Towers*, LLC, 3 Cal. 5th 744, 398 P.3d 556, 561 (Cal. 2017) (referring to the "traditional rules of contract interpretation"). That analysis always begins with the plain text of the provision, which must then be read in context with all other relevant provisions in the agreement in order to derive the parties' intent. *See* Cal. Civ. Code §§ 1636-1639, 1641.

Section 6.01 provides, in relevant part:

> Countrywide shall indemnify the Purchaser and hold it harmless against any and all claims, losses, damages, penalties, fines, forfeitures, *reasonable and necessary attorneys' fees* and related costs, judgments, and any other costs, fees and expenses that the Purchaser may sustain *in any way related to the failure of Countrywide to perform its obligations hereunder including its obligations to service and administer the Mortgage Loans in compliance with the terms of this Agreement. . .*

Chaitman Dec. **Exh. 1** at § 6.01 (emphasis added).

California courts, including the California Supreme Court and the Court of Appeals for the Ninth Circuit, have held that "parties to a contract use the term 'indemnity' to include direct liability, as well as third party liability." *Dream Theater, Inc.,* 124 Cal.App.4th at 555; *see also Rossmoor Sanitation, Inc. v. Pylon, Inc.,* 13 Cal.3d 622, 628, 119 Cal.Rptr. 449, 532 (Cal. 1975); *accord Zalkind*, 194 Cal. App. 4th at 1023; *Yang Ming Marine v. Okamoto Freighters Ltd.* 259 F.3d 1086, 1092 (9th Cir.2001); *Atari Corp. v. Ernst & Whinney,* 981 F.2d 1025 (9th Cir.1992). Indeed, Section 2772 of the California Civil Code defines "indemnity" as "a contract by which

one engages to save another from a legal consequence of the conduct of one of the parties, or of some other person." California courts interpret this definition to expressly contemplate both direct claims for indemnification and third party indemnification. *See, e.g. Ret. Hous. Found. v. Cain Brothers & Co.,* B239439, 2013 WL 6858251, at *6 (Cal. App. 2d Dist. Dec. 30, 2013), *as modified on denial of reh'g* (Jan. 29, 2014) (unpublished).

Similarly, Black's Law Dictionary defines the term "indemnify" to mean:

> **indemnify** (in-dem-nə-fi) vb. (17c) 1. To reimburse (another) for a loss suffered because of a third party's or one's own act or default; hold harmless. 2. To promise to reimburse (another) for such a loss. 3. To give (another) security against such a loss. — indemnifiable, adj.

In *Atari Corp.*, the Ninth Circuit found that the district court had erred by limiting an indemnification provision to third party claims, stating that it was "wrong to assume that the word 'indemnify' necessarily carries with it the baggage of the clauses in which it most frequently appears." Instead, the word "indemnify," broadly "refers to compensation for loss in general, [and] not just particular types of loss.' *Atari Corp.*, 981 F.2d at 1031–1032); *Zalkind*, 194 Cal. App. 4th at 124; *see also Yang Ming,* 259 F.3d at 1092.

The indemnification language in MLPSA § 6.01 is very similar to the indemnification clause in *Zalkind,* which held, in relevant part:

> the Buyer shall indemnify, hold harmless and defend the Selling Parties and their respective successors and assigns . . . from and against any and all Damages [defined elsewhere to include attorneys' fees] that arise from or are in connection with. . . [a]ny breach or default by the Buyer of its covenants or agreements contained in this Agreement.

*Zalkind,* 194 Cal. App. 4th at 1022. As in *Zalkind,* Section 6.01 contains no language from which one could infer an intent to narrow its application to third party claims.

As mentioned in II above, Defendants' contention that an indemnification clause requires some sort of "additional language" to encompass direct claims for breach of contract within its

scope is just another way of saying that the clause must be sufficiently broad.  Even if California law did require such "additional language," however, that language exists in Section 6.01.  In *Continental Heller*, the court held that the first provision that concerned attorneys' fees was insufficiently broad to encompass first party claims because it covered only "all claims, damages, losses and expenses including attorneys' fees arising out of or resulting from the performance of the Work.*" Continental Heller,* 61 Cal. Rptr. at 672.  The second provision, however, contained a clause that allowed attorneys' fees "suffered or incurred on account of any breach of the aforesaid obligations and covenants, and any other provision or covenant of this Subcontract*"* and did encompass third party claims.  This language virtually mirrors the language of Section 6.01, which as set forth above, allows attorneys' fees for claims "in any way related to the failure of Countrywide to perform its obligations hereunder including its obligations to service and administer the Mortgage Loans in compliance with the terms of this Agreement."  Chaitman Dec.

**Exh. 1.**  As the court held in *Continental Heller*,

> [i]t is clear this concluding paragraph is not referring to indemnity for attorney fees incurred in defending [third party] actions. . . . Rather, the quoted language is intended to entitle Continental to attorney fees in any action it brings against Amtech for breach of any provision of the contract.

*Continental Heller*, 61 Cal. Rptr. 2d at 673.

Obviously, if the parties had intended this language to apply only in the context of third party claims, they could easily have said so, as they did in Section 6.02 immediately following.  Indeed, Section 6.02 is explicitly entitled "Third Party Claims" and, where there is no provision in the agreement disclaiming the relevance of titles, they are to be interpreted in accordance with their terms.  *See Bldg. Maint. Serv. Co. v. AIL Sys., Inc*., 55 Cal. App. 4th 1014, 1030, 64 Cal. Rptr. 2d 353, 363 (Cal. App. 2d Dist. 1997) (giving consideration to "the subject matter heading" of the

contested provision); *Myers Bldg. Indus., Ltd. v. Interface Tech., Inc.*, 13 Cal. App. 4th 949, 970, 17 Cal. Rptr. 2d 242, 254 (Cal. App. 2d Dist. 1993).

The cases Defendants cite in support of their position that Section 6.01 only applies to third party claims are distinguishable.  Many of them construe stand-alone indemnity agreements, which are specifically directed to addressing the parties' obligations with respect to third party claims and do not govern the parties' transaction or relationship as a whole.  *See, e.g., Baldwin Builders v. Coast Plastering Corp.,* 125 Cal. App. 4th 1339, 24 Cal. Rptr. 3d 9 (Cal. App. 4th Dist. 2005); *Hillman v. Leland E. Burns, Inc.,* 209 Cal. App. 3d 860, 257 Cal. Rptr. 535 (Cal. App. 1st Dist. 1989); *Otis Elevator Co. v. Toda Constr. of Cal.,* 27 Cal. App. 4th 559, 32 Cal. Rptr. 2d 404 (Cal. App. 6th Dist. 1994).  These cases stand for the uncontroversial proposition that a stand-alone indemnity agreement will not be construed as applying to attorneys' fees in direct litigation between the parties unless it "explicitly provide[s] for attorney fees incurred in pursuing an indemnity claim'" *See GAP, INC., Pl. and Respt., v. APEX XPRESS, INC., Def. and Appellant.*, A146176, 2017 WL 2569914, at *6 (Cal. App. 1st Dist. June 14, 2017.)  That is not the case here.

The five cases that Defendants cite as having sufficiently "specific" language to encompass attorney's fees in direct litigation all consider prevailing party clauses, which are not at issue here. *See, e.g., Hsu v. Abbara*, 9 Cal. 4th 863, 866, 891 P.2d 804, 806 (Cal. 1995) ("In any action between Broker, BUYER or SELLER arising out of this agreement, the *prevailing party* shall be entitled to reasonable attorney's fees and costs."); *Exxess Electronixx v. Heger Realty Corp.*, 64 Cal. App. 4th 698, 702–03, 75 Cal. Rptr. 2d 376 (Cal. App. 2d Dist. 1998) (contract provision applicable where lease held that "any Party or Broker brings an action or proceeding to enforce the terms hereof or declare rights hereunder" expressly awarded "reasonable attorney's fees" to the "*Prevailing Party*," which was itself a defined term in the contract); *Silver Creek, LLC v.*

*BlackRock Realty Advisors*, Inc., 173 Cal. App. 4th 1533, 1537, 93 Cal. Rptr. 3d 864, 867 (Cal. App. 4th Dist. 2009) ("Specifically, the agreements provided that if any proceeding is brought in connection with the agreements that the *prevailing party* 'shall be entitled' to recover reasonable attorney's fees and that '[t]he parties intend this provision to be given the most liberal construction possible and to apply in any circumstances in which such party reasonably incurs expenses.'"); *Turner v. Schultz*, 175 Cal. App. 4th 974, 979, 96 Cal. Rptr. 3d 659, 662 (Cal. App. 1st Dist. 2009) ("In the event any legal action or arbitration is commenced of any kind or character, to enforce the provisions of this Agreement or to obtain damages for breach thereof, the *prevailing party* in such action shall be entitled to all costs and reasonable attorney's fees incurred in connection with such action."); *Eden Twp. Healthcare Dist. v. Eden Med. Ctr*., 220 Cal. App. 4th 418, 426, 162 Cal. Rptr. 3d 932, 938 (Cal. App. 1st Dist. 2013) ("The *prevailing party* in any action or proceeding commenced in court for breach of this Agreement shall be entitled to its attorneys' fees, costs, and expenses of experts incurred in prosecuting or defending such action or proceeding.").

Clearly, Section 6.01 is not a prevailing party clause and, hence, these cases, relied upon by Defendants, are inapplicable.

Finally, defendants rely heavily on *Alki Partners, LP v DB Fund Services, LLC,* 209 Cal. Rptr. 3d 151 (Cal. App. 4th Dist. 2016), to support their position that Section 6.01 is simply a third party indemnification clause.  *Alki Partners,* however, is entirely distinguishable.  First, the party seeking the attorneys' fees was the defendant in the action, therefore of necessity the indemnity provision had to be construed as a prevailing party clause in order for the defendant to recover its attorneys' fees at all.  Here, Spencer is the plaintiff.  It contends (and, as set forth in Point I above, Defendants agree) that Section 6.01 is an indemnification clause, not a prevailing party provision.

By its very terms, it awards attorneys' fees as an element of losses arising out of Defendants' breach of their servicing obligations.

Second, the court in *Alki* looked to Cal. Civ. Code § 1641, which requires that a court interpret a contract as a whole, with "each clause helping to interpret the other."  *Alki Partners,* 209 Cal. Rptr. 3d at 174.  Since the clause in question in *Alki Partners* contained a reference to criminal proceedings (which obviously could not be a direct claim), the court construed the entire clause to "embrace 'only things similar in nature' to the specific words—that is, third party claims."  Here, of course, there is no reference to criminal proceedings (or any other third party claim).

Thus, the plain language of Section 6.01 compels a determination that Spencer is entitled to recover its attorneys' fees.

**B.      Indemnification is Provided for Throughout the MLPSA**

The remedy for a breach of contract is generally expectancy damages, except where there is a different remedy set forth in the contract itself.  *See Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th 503, 515, 28 Cal.Rptr.2d 475, 869 P.2d 454 (Cal. 1994) ("[C]onsequential damages beyond the expectations of the parties are [generally] not recoverable.") (citing Cal. Civ. Code § 3300); *accord Civic Ctr. Drive Apartments Ltd. Partn. v. S.W. Bell Video Services*, 295 F. Supp. 2d 1091, 1107 (N.D. Cal. 2003); *see also* Cal. Civ. Code § 3358 ("[N]o person can recover a greater amount in damages for the breach of an obligation, than he could have gained by the full performance thereof . . ."); *accord In re Transact, Inc.,* 13-CV-1312 (MWF), 2014 WL 3888230, at *11 (C.D. Cal. Aug. 6, 2014) ("the correct measure of damages . . .  is expectancy damages: an amount sufficient to compensate [plaintiff] for the detriment proximately caused by the breach . . .  and [to] place [plaintiff] in the position it would have held had [defendant] fully and properly performed.").

Here, the MLPSA provides a remedy for all sorts of breaches and is not limited to expectancy damages alone.  Section 6.01 is just one example of that.  The MLPSA defines the parties' respective obligations and contemplates various situations in which one party's breach would cause the other party to incur losses.  Indemnification is the primary mechanism used to protect the non-breaching party.  For example, Section 2.04 provides that Defendants will indemnify Spencer for a failure to provide Spencer with the appropriate credit file for each loan—the absence of which would render Spencer unable to conduct any due diligence in evaluating the loan.  As Defendants previously argued in their motion to dismiss, Section 3.03 provides a remedy for Defendants' breach of their representations and warranties, including indemnification for any losses Spencer incurred on the loans or repurchase of the loans in question, and Section 6.01 provides the remedy for Defendants' breach of their obligations to service the loans.  *See, e.g.* Defs. 2014 Br. at 11, Chaitman Dec. **Exh. 2**.

Under Section 6.04, a clause entitled "Limitation on Liability of Countrywide and Others" the MLPSA provides that Defendants are *not* protected against (1) "any breach of warranties or representations made herein" (2) "failure to perform [their] obligations in compliance with any standard of care set forth in this Agreement, or" (3) "any liability which would otherwise be imposed by reason of any breach of the terms and conditions of this Agreement."  By its terms, this clause recognizes that Defendants can be liable for three types of breaches, each of which is distinct.  The third type of breach:  "any liability which would otherwise be imposed . . ." implies that remedies for the first two types of liability are set forth in the MLPSA itself, which they are, at Section 3.03 and Section 6.01 respectively.

Under other circumstances, the MLPSA requires Spencer to indemnify the Defendants, such as in a case where Spencer has breached its own representations and warranties about its ability to purchase the loans at issue.  *See* MLPSA § 3.06.

Finally, and notably, Section 6.02 delineates the parties' obligations in connection with claims brought by third parties, providing a defense as well as an indemnification.  ("Countrywide shall assume the defense of any such claim and pay all expenses in connection therewith, including attorneys' fees, and promptly pay, discharge and satisfy any judgment or decree which may be entered against it or the Purchaser in respect of such claim.")  Thus, Section 6.02 fulfills the precise purpose which Defendants claim that Section 6.01 is intended to achieve.  Obviously, it would make no sense for the parties to have included two provisions dealing with the exact same relief.

## III.   THE INDEMNIFICATION PROVISION AT SECTION 6.01 IS NOT RECIPROCAL

Contrary to Defendants' claim, California Civil Code § 1717 does not apply to Section 6.01.  This statute only applies to prevailing party clauses.  As the court explained in *Myers Bldg. Industries, Ltd. v. Interface Tech., Inc.*, 17 Cal. Rptr. 2d 242 (Cal. App. 2d Dist. 1993), *as modified on denial of reh'g* (Mar. 26, 1993):

> the provisions of Civil Code section 1717 were never intended to inflict upon the indemnitee the obligation to indemnify his indemnitor in similar circumstances. Indemnification agreements are intended to be unilateral agreements. The Legislature has indicated no intent to make them reciprocal by operation of law.

*Id.* at 256; *see also Fed. Agri. Mortg. Corp. v. It's A Jungle Out There Inc.,* C 03-3721 BZ, 2006 WL 1305207, at *2 (N.D. Cal. May 10, 2006).

Moreover, even if there were a prevailing party clause in the MLPSA, the application of Cal. Civ. Code § 1717 would only give Defendants the right to recover attorneys' fees if they "prevailed" in an action arising from Spencer's breach of the MLPSA. *See Exxess Electronixx v. Heger Realty Corp.,* 75 Cal. Rptr. 2d 376, 385-386 (Cal. App. 2d Dist. 1998) ("we cannot equate

raising a "defense" with bringing an "action" or "proceeding") (Cal. Civ. Code § 1717 does not necessarily give rise to the recovery of fees incurred in successfully *defending against* an action for breach).   Spencer has not breached the MLPSA, and Defendants have not raised any counterclaims in this action.  Thus, there is no claim at issue here that could implicate Cal. Civ. Code § 1717, even if it applied.

## CONCLUSION

As set forth herein, and in the accompanying Declaration of Helen Davis Chaitman, Spencer is entitled to recover its attorneys' fees in this case.  Defendants' motion should be denied in its entirety.

Dated:  May 25, 2018
        Frenchtown, New Jersey

CHAITMAN LLP

*/s/ Helen Davis Chaitman*
Helen Davis Chaitman
Suzan Arden (*pro hac vice*) SA-4715
Agatha M. Cole (*pro hac vice*)
hchaitman@chaitmanllp.com
sarden@chaitmanllp.com
acole@chaitmanllp.com
Chaitman LLP
115 Fairview Road
Frenchtown, NJ 08825
(888) 759-1114

465 Park Avenue
New York, New York 10022

*Attorneys for Plaintiff Spencer Savings Bank SLA*