UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SPENCER SAVINGS BANK, S.L.A., a mutual savings and loan association,

    *Plaintiff*,

v.

BANK OF AMERICA CORPORATION, successor to Countrywide Financial Corporation; COUNTRYWIDE FINANCIAL CORPORATION; COUNTRYWIDE HOME LOANS, INC.; COUNTRYWIDE HOME SERVICING, LP; BANK OF AMERICA, N.A.; and BAC HOME LOAN SERVICING, LP,

    *Defendants*.

Civil No.: 14-cv-4633 (KSH) (CLW)

OPINION

**Katharine S. Hayden, U.S.D.J.**

I.    **Introduction**

Plaintiff Spencer Savings Bank, S.L.A. ("Spencer") brought suit against defendants, claiming that they breached a Mortgage Loan Purchase and Security Agreement ("Agreement") by failing to carry out their obligations to properly service mortgage loans Spencer purchased under the Agreement. Defendants have moved[1] pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings that the Agreement does not entitle Spencer to its attorneys' fees in prosecuting this action (D.E. 122). The motion is fully briefed (D.E. 122, 124, 127), and the Court decides it without oral argument.

---

[1] The moving defendants are Countrywide Financial Corporation, Countrywide Home Loans, Inc., and Bank of America, N.A., in its own capacity and as successor by July 1, 2011 *de jure* merger to BAC Home Loans Servicing, LP (f/k/a Countrywide Home Loans Servicing, LP). As explained *infra*, Spencer's claim against Bank of America Corporation has, by agreement between the parties, been stayed.

II. **Background**

The factual genesis of Spencer's claims is set forth in the Court's prior opinion granting in part and denying in part defendants' partial motion to dismiss the complaint (D.E. 42). The Court assumes familiarity with that opinion and recounts the relevant history only briefly. Spencer, a mutual banking association, alleges that it entered into the Agreement with defendants[2] in 2005, under which it purchased 130 mortgage loans, 99 of which remained active when the complaint was filed. (D.E. 1-2, Compl. ¶¶ 1-2 & Ex. A (Agreement).) Under the Agreement, defendants would service the mortgage loans in exchange for a fee from Spencer. (Compl. ¶¶ 3, 52; D.E. 51 ¶¶ 3, 52; D.E. 52 ¶¶ 3, 52; Agreement §§ 4.01-4.18.) Spencer claims that defendants breached various servicing-related obligations, and that its mismanagement significantly devalued the loan portfolio, particularly as to 42 loans that had been in collection. (Compl. ¶¶ 4-7, 50-102.)

Spencer alleges that on May 9, 2012, it put defendants on notice of their contractual default and demanded they cure their breaches; that its demand was rejected (which defendants deny in their answers); and that on June 21, 2012, it gave notice of termination of the Agreement. (*Id.* ¶¶ 104-06.) On March 21, 2014, after conducting an "exhaustive review of the subject loan files," Spencer asserts, it demanded that defendants repurchase the delinquent loans and reimburse it for "all consequential damages" resulting from their breach, "in an amount

---

[2] Spencer entered into the Agreement with defendant Countrywide Home Loans, Inc., which Spencer alleges was later acquired by defendant Bank of America Corporation, an acquisition in in which defendant Bank of America, N.A. "participated." (Compl. ¶¶ 2, 12-14 & Ex. A.) Defendants dispute this characterization of the merger history to an extent (D.E. 51 ¶¶ 12-14; D.E. 52 ¶¶ 12-14), but there appears to be no dispute that one of the defendant Bank of America entities is now the servicer of the Spencer-owned loans under the Agreement (Compl. ¶ 52; D.E. 51 ¶ 52; D.E. 52 ¶ 52.) Because the precise sequence of transactions is not relevant to the contract interpretation question before the Court, the defendant entities are referred to collectively as "defendants."

exceeding $10,841,252.38." (*Id.* ¶ 107.)

The dispute was not resolved, and in May 2014, Spencer filed a four-count complaint, which was later removed to this Court. As described in the Court's prior opinion, in count 1, Spencer asserted a breach of contract claim; in count 2, it sought indemnification for all losses and legal expenses caused by the breaches; in count 3; it claimed that defendant Bank of America Corporation is liable for the other defendants' breaches pursuant to a theory of successor liability; and in count 4, it sought injunctive relief compelling the repurchase of the 42 delinquent loans at par value and "all ancillary damages" for the breaches. (*See* D.E. 42, 6/30/15 Op. at 4; Compl. ¶¶ 103-131.) The Court dismissed count 4 on June 30, 2015 (D.E. 42, 43), and the defendants answered the complaint on July 31, 2015 (D.E. 51, 52.) In June 2017, the parties agreed, in a stipulation that the Court approved, to stay and hold in abeyance count 3, which they described as asserting a successor liability claim against Bank of America Corporation, until the primary liability claims are resolved against the remaining defendants (D.E. 101).

Defendants have now moved under Fed. R. Civ. P. 12(c) for judgment on the pleadings, limited to the issue of whether Spencer may recover attorneys' fees for its prosecution of this action. Defendants argue that under California law, which the parties do not dispute governs the Agreement, § 6.01 of the Agreement neither expressly authorizes Spencer to recover attorneys' fees incurred in this action nor operates as a prevailing party provision entitling Spencer to recover attorneys' fees. Instead, defendants contend that § 6.01's attorneys' fee language should be interpreted as referring only to legal costs incurred incidental to defendants' performance of their loan servicing obligations under the Agreement; *i.e.*, in third-party actions. (*See* D.E. 122, Defs.' Moving Br.)

Spencer contends in opposition that indemnification clauses such as § 6.01 permit the recovery of attorneys' fees for defendants' breach of contract, regardless of whether "that breach leads to a first party breach of contract claim, or just a third party claim" (D.E. 124, Pl.'s Opp. Br. 2), and that the plain language of § 6.01 and the Agreement as a whole support its interpretation. Spencer also contends that defendants are judicially estopped from offering their present interpretation of § 6.01 based on arguments they made in their 2014 motion to dismiss, with which they claim the Court agreed. In reply, defendants dispute that their prior arguments or the Court's ruling trigger judicial estoppel and reiterate their proffered interpretation of § 6.01. (D.E. 127, Defs.' Reply Br.)

### III. Legal Standard

Fed. R. Civ. P. 12(c) permits motions for judgment on the pleadings to be made "[a]fter the pleadings are closed—but early enough not to delay trial." A motion for judgment on the pleadings for failure to state a claim, which defendants argue is the case here, "'is analyzed under the same standards that apply to a Rule 12(b)(6) motion.'" *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017) (quoting *Revell v. Port Auth. of N.Y., N.J.*, 598 F.3d 128, 134 (3d Cir. 2010)), *cert denied*, 138 S. Ct. 2623 (2018). Accordingly, the Court must accept the plaintiff's pleaded allegations as true, and draw all reasonable inferences in its favor. *Id.* at 417-18. The motion will be granted only if the movant shows that no material issues of fact exist and that it is entitled to judgment as a matter of law. *Id.* at 417. As with a motion under Fed. R. Civ. P. 12(b)(6), the Court is confined to the pleadings and a limited universe of additional documents in ruling on a motion for judgment on the pleadings. *See* Fed. R. Civ. P. 12(d); *Teel v. Eliasen*, 2018 U.S. Dist. LEXIS 183853, at *4-5 (D.N.J. Oct. 26, 2018) (Kugler, J.).

**IV. Analysis**

The crux of the parties' dispute is the proper interpretation of § 6.01 of the Agreement, which provides as follows:

> Section 6.01 **Additional Indemnification by Countrywide.** In addition to the indemnification provided in Section 3.03(d), Countrywide shall indemnify the Purchaser and hold it harmless against any and all claims, losses, damages, penalties, fines, forfeitures, reasonable and necessary attorneys' fees and related costs, judgments, and any other costs, fees and expenses that the Purchaser may sustain in any way related to the failure of Countrywide to perform its obligations hereunder including its obligations to service and administer the Mortgage Loans in compliance with the terms of this Agreement. Notwithstanding the foregoing, the Purchaser shall indemnify Countrywide and hold it harmless against any and all claims, losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and any other costs, fees and expenses that Countrywide may sustain in any way related to (a) actions or inactions of Countrywide which were taken or omitted upon the instruction or direction of the Purchaser, or (b) the failure of the Purchaser to perform its obligations hereunder, including subsections (i) and (ii) in Section 6.04.

Defendants contend that this provision's reference to their indemnification of Spencer's attorneys' fees should be construed to include only attorneys' fees incurred in third-party actions (*e.g.*, actions to collect on the loans or foreclose on the properties securing them) or otherwise incident to defendants' performance of their servicing obligations, whereas Spencer claims that attorneys' fees incurred in first-party, or direct, actions between the parties to the Agreement – specifically, this action by Spencer for breach of the Agreement by defendants – must also be reimbursed.

**A. Judicial Estoppel Does Not Apply**

In its papers, Spencer emphasizes a threshold issue: whether defendants are judicially estopped from offering their interpretation of § 6.01. The doctrine of judicial estoppel allows a court to "defend the integrity of the judicial process by barring a party from taking contradictory positions during the course of the litigation." *G-I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d

247, 261 (3d Cir. 2009).³  Three factors inform the Court's decision whether to apply the doctrine: (1) whether the party has taken "irreconcilably inconsistent positions," (2) whether it adopted those inconsistent positions in bad faith, and (3) whether estoppel would address the harm and no lesser sanction would suffice.  *Id.* at 262 (citation and internal quotation marks omitted).  Applying judicial estoppel to bar a party's position is an "extreme remedy" to be used "only when the inconsistent positions are tantamount to a knowing misrepresentation to or even fraud on the court."  *Chao v. Roy's Constr., Inc.*, 517 F.3d 180, 186 n.5 (3d Cir. 2008) (citations and internal quotation marks omitted).

Spencer's argument falls well short of this standard, and in fact fails at the first step: defendants have not taken a position inconsistent with the arguments they made in support of their motion to dismiss.  There, defendants argued that indemnification under § 6.01 for actual losses is the contractually-permitted remedy for the servicing breaches claimed by Spencer, and that the repurchase remedy Spencer sought was available only for breaches of certain representations and warranties.  (*See* D.E. 11-1, Defs.' Mot. Dismiss Br.; D.E. 20, Defs.' Mot. Dismiss Reply Br.)  In other words, they asserted that § 6.01 supplied the proper set of remedies for the servicing breaches claimed, and that Spencer could not invoke the more-generous repurchase remedy provided in § 3.03(d) for breaches of representations and warranties.  Defendants made no argument concerning, and the Court had no occasion to consider, the specific categories of loss Spencer would be entitled to recover under § 6.01.

The language Spencer cites from defendants' dismissal briefing does not indicate otherwise.  First, defendants' argument that Spencer's only remedy for servicing breaches is indemnification for losses caused by the breach does not translate to an "admission" that that

---

³ Federal judicial estoppel law applies in this diversity action.  *G-I Holdings*, 586 F.3d at 261.

6

indemnification would cover first- and third-party claims as opposed to third-party claims only. (Pl.'s Opp. Br. 6.) Similarly, defendants' references to § 6.01 as permitting indemnification for losses do not amount to an "acknowledgment" that such indemnification would include recovery of attorneys' fees; defendants were arguing that the remedy of repurchase is inapplicable to servicing breaches. (*Id.* at 8-9.) Moreover, defendants do not argue now that *no* indemnification is available (*cf. id.* at 9); the dispute in the motion pending before the Court concerns whether a certain category of attorneys' fees would be *included* in the indemnification. Put succinctly, defendants' positions are not "irreconcilably inconsistent." They are not even inconsistent.

Even if Spencer were correct that defendants previously took the position it now ascribes to them, it is generally inappropriate to apply judicial estoppel "where the defending party did not convince the District Court to accept its earlier position." *G-I Holdings*, 586 F.3d at 262; *accord New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Here, the Court's partial dismissal opinion made no findings or conclusions about the proper interpretation of § 6.01 or the specific categories of relief to which Spencer would be entitled under § 6.01 if defendants are adjudged to have breached their servicing obligations. Instead, the Court reached the far more general conclusion that the remedies in § 6.01, and not remedies that appear elsewhere in the Agreement, apply to Spencer's claim that defendants breached their servicing obligations. Accordingly, the Court declines to apply judicial estoppel to preclude defendants from making their present arguments about the scope of § 6.01. Spencer's law of the case argument is similarly meritless. The Court has not previously ruled on whether § 6.01 permits recovery of first-party attorneys' fees; as such, there is no "law of the case" as to this issue.

### B. Section 6.01 Does Not Preclude Spencer from Recovering its Attorneys' Fees in this Action

The Court must, therefore, consider the substance of the parties' arguments as to the interpretation of § 6.01, and specifically the scope of the attorneys' fees language in that provision. As a general matter, California follows the American rule, under which "each party to a lawsuit ordinarily pays its own attorney fees." *Mtn. Air Enters., LLC v. Sundowner Towers, LLC*, 398 P.3d 556, 560 (Cal. 2017). However, the parties may adjust this default rule by agreement. Pursuant to California Code of Civil Procedure § 1021, "[e]xcept as attorney's fees are specifically provided for by statute" – which is undisputedly not the case here – "the measure and mode of compensation of attorneys . . . is left to the agreement, express or implied, of the parties[.]" Section 1021 therefore permits parties to "'contract out' of the American rule" through an agreement to allocate attorneys' fees. *Mtn. Air*, 398 P.3d at 560 (quoting *Trope v. Katz*, 902 P.2d 259 (Cal. 1995)). As such, parties can "'validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves,'" whether in tort or contract. *Id.* at 561 (quoting *Santisas v. Goodin*, 951 P.2d 399, 405 (Cal. 1998)).

The parties appear to agree that § 6.01 requires defendants to indemnify Spencer for attorneys' fees incurred in third-party actions related to defendants' breach of their servicing obligations. They diverge, however, on whether that section also requires defendants to pay Spencer's attorneys' fees in this first-party action *between* them for breach of defendants' servicing obligations. As with other contract interpretation issues, whether such fees are within the scope of the provision depends on "the mutual intention of the parties at the time the contract . . . was formed." *Mtn. Air*, 398 P.3d at 561 (citing Cal. Civ. Code § 1636).[4] The parties'

---

[4] To the extent both sides characterize § 6.01 as an indemnification agreement, the same rules of contract interpretation apply. *Alki Partners, LP v. DB Fund Servs., LLC*, 209 Cal. Rptr. 3d 151,

8

intentions are to be determined, if possible, from the "writing alone," and the words of that writing are to be given their "'clear and explicit' meaning . . . interpreted in their 'ordinary and popular sense,'" unless the parties use them in a technical sense or "'a special meaning is given to them by usage.'" *Id.* (quoting Cal. Civ. Code §§ 1644, 1638). "[I]f the meaning a layperson would ascribe to that contract language is not ambiguous," the Court applies that meaning. *Id.*

If the parties dispute the meaning of contract language, the Court is tasked with determining whether the language is "'reasonably susceptible' to the interpretations urged by the parties." *Thor Seafood Corp. v. Supply Mgmt. Servs.*, 352 F. Supp. 2d 1128, 1131 (C.D. Cal. 2005) (quoting *Badie v. Bank of Am.*, 79 Cal. Rptr. 2d 273, 285-86 (Cal. Ct. App. 1998)). Language that is susceptible to more than one reasonable interpretation is ambiguous. *Badie*, 79 Cal. Rptr. 2d at 286. In making this assessment, the Court can examine the contract language or extrinsic evidence of intent. *Id.* But extrinsic evidence is only considered to "'aid the court in ascertaining the true intent of the parties, not to show that the parties meant something other than what they said but to show what they meant by what they said.'" *Thor Seafood*, 352 F. Supp. 2d at 1131 (quoting *Denver D. Darling, Inc. v. Controlled Envt's Constr., Inc.*, 108 Cal. Rptr. 2d 213, 223 (Cal. Ct. App. 2001)).

Moreover, "a contract must be understood with reference to the circumstances under which it was made and the matter to which it relates." *Mtn. Air*, 398 P.3d at 561 (citations and internal quotation marks omitted); *see also* Cal. Civ. Code § 1647 (same). It is to be read as a whole, with effect given to every part of it, so long as "reasonably practicable." Cal. Civ. Code

---

171 (Cal. Ct. App. 2016) ("Indemnity agreements are construed under the same rules that govern interpretation of other contracts."); *accord Hot Rods, LLC v. Northrop Grumman Systems Corp.*, 196 Cal. Rptr. 3d 53, 63 (Cal. Ct. App. 2015).

9

§ 1641. And contract interpretation is a question of law for the Court, unless "the interpretation turns upon the credibility of extrinsic evidence." *Thor*, 352 F. Supp. 2d at 1131.

Beginning, as is required, with the ordinary meaning of the terms used and the interpretations offered by each side, the language at issue requires defendants to indemnify and hold harmless Spencer from "any and all claims, losses, damages, penalties, fines, forfeitures, *reasonable and necessary attorneys' fees* and related costs, judgments, and any other costs, fees and expenses that [Spencer] may sustain *in any way related to* the failure of Countrywide to perform its *obligations hereunder including* its obligations to service and administer the Mortgage Loans in compliance with the terms of this Agreement." Agreement § 6.01 (emphasis added). Spencer contends that this language is broad and plainly encompasses both third-party and direct actions because there is no express limitation to third-party actions. Indeed, the phrase "in any way related to," by its terms, admits of no apparent limitation on the nexus sufficient to permit recovery by Spencer of "reasonable and necessary attorneys' fees" when defendants have breached their obligations "hereunder" – meaning under the Agreement as a whole. *See* Agreement § 8.04(e).[5] As written, the language does not even limit Spencer's attorneys' fees entitlement to instances in which defendants breached servicing obligations; instead, based on the definition of the term "hereunder," the obligation arises when defendants breach *any* obligation under the Agreement.

Defendants argue, however, that § 6.01's attorneys' fees language should be interpreted more narrowly because it does not "expressly refer[] to litigation between the parties to 'enforce' the agreement or to the recovery of fees by the 'prevailing party,'" and therefore does not reflect

---

[5] There is no express indication or contextual requirement here that "hereunder" be defined more narrowly. *See* Agreement § 8.04 (prefatory language).

10

an intent to apply the attorneys' fee language to actions between the parties to enforce the contract. (Defs.' Moving Br. 7-8.) They further argue that indemnification clauses only permit recovery for legal costs incidental to the agreement, such as legal fees incurred in defending third-party actions, unless the clause specifically and unambiguously states that attorneys' fees in an action between the parties on the contract are recoverable. (*See id.* at 8-13.)

The parties' dispute over interpretation boils down to this: Spencer believes that a contractual provision such as § 6.01 providing indemnification for attorneys' fees applies, as a default matter, to such fees incurred in both third-party actions and in direct actions between Spencer and defendants as a result of defendants' contractual breaches, and that fees in direct actions are to be carved out only if expressly excluded. Defendants believe the default rule to be the opposite: attorneys' fees incurred in direct actions are included *only* if the contractual provision expressly includes them.

In support of their respective positions, both sides offer case law interpreting provisions in other contracts. That case law, however, does not support the proposition that California takes the categorical position each side is advocating for. Instead, the determination is to be a fact-specific one that relies on ordinary principles of contract interpretation. Applying those principles here leads to the conclusion that § 6.01 is drafted sufficiently broadly to permit Spencer to recover its attorneys' fees in first-party actions between it and defendants. Whether Spencer may actually do so in this case must, of course, await determination of whether defendants breached the Agreement.

An instructive example of California's approach is *Hot Rods, LLC v. Northrop Grumman Systems Corp.*, 196 Cal. Rptr. 3d 53 (Cal. Ct. App. 2015), which confronted a contractual provision by which the defendant property seller agreed to indemnify plaintiff property buyer

against various claims, losses, and fees (including attorneys' fees) arising out of environmental actions involving conditions or liability caused by acts of the seller, along with personal injury or property damage arising from materials the seller used at the property. *See id.* at 61. The court affirmed a referee's conclusion that the provision (which contained no express language distinguishing between first- and third-party claims) was sufficiently broad to encompass direct claims by the buyer against the seller and rejected the seller's argument that it applied only to third-party claims. *Id.* at 62-65.

Rather than "magic words," it was the parties' intent, discerned through principles of contract interpretation, that answered whether direct claims were included: although "[i]ndemnity provisions typically refer to third party claims," the court reasoned, if the parties so intend, the provision may also reach direct claims. *Id.* at 62 (citing *Zalkind v. Ceradyne, Inc.*, 124 Cal. Rptr. 3d 105, 113 (Cal. Ct. App. 2011)). Thus, while recognizing the applicability of indemnity provisions *generally* to third-party actions, the court rejected the notion that they are *always* so limited in the absence of an express reference to direct actions. *See also id.* at 63 ("[W]hile [seller] argues there must be 'express language' in an indemnity clause before it is interpreted to encompass first party claims, we disagree. It is the intent of the provision, and the agreement as a whole, that governs.").

In determining that the parties did not intend to exclude direct claims, the California court looked to the broad language of the provision, other language in the contract, the contract as a whole, and the treatment of similar language in other actions.[6] *See also Zalkind*, 124 Cal. Rptr. 3d at 109, 112-18 (provision indemnifying party from damages arising from counterparty's

---

[6] The parties' contract expressly barred consideration of extrinsic evidence.

12

breaches of agreement applied to direct, as well as third-party, claims; scope and extent of duty to indemnify are to be determined from contract itself); *Wilshire-Doheny Assocs., Ltd. v. Shapiro*, 100 Cal. Rptr. 2d 478, 490 (Cal. Ct. App. 2000) (where nothing in language of indemnity provisions specifically limited application to third-party actions and party pointed to "no extrinsic evidence introduced to demonstrate that the parties intended these provisions to apply to third party lawsuits only," provisions applied to direct action between contracting parties and permitted recovery of attorneys' fees for same); *Continental Heller Corp. v. Amtech Mech. Servs., Inc.*, 61 Cal. Rptr. 2d 668, 673 (Cal. Ct. App. 1997) (attorneys' fees indemnification provision applied in action between the parties); *accord In re Marriage of Vaughn*, 29 Cal. App. 5th 451, 459-60 (Cal. Ct. App. 2018) (following *Zalkind* and *Hot Rods*).[7]

*Zalkind*, which also applies traditional contract interpretation principles to conclude that an indemnification provision reached direct claims, is particularly instructive given the similarity of its indemnification provision to § 6.01. The court described the relevant language as follows:

> Section 14.2 provides that *Ceradyne "shall indemnify, hold harmless and defend the Selling Parties and their respective successors and assigns … from and against any and all Damages that arise from or are in connection with:* [¶] (a) *Any breach of or inaccuracy in any of the representations or warranties of any of [Ceradyne] contained in Section 6 of this Agreement or in any of the certificates delivered hereunder by or on behalf of [Ceradyne] pursuant to such representations or warranties; or* [¶] (b) *Any breach or default by [Ceradyne] of its covenants or agreements contained in this Agreement."* Section 14.1 similarly provides that Quest and Stanley Zalkind agree to "indemnify, hold harmless and defend" Ceradyne from and against any and all "Damages."
>
> Section 14.3 of the Asset Purchase Agreement states: "'Damages,' as used in this Section 14, shall mean: (i) demands, claims, actions, suits, investigations and legal or other proceedings brought against any indemnified party or parties, and any judgments or assessments, fines or penalties rendered

---

[7] Defendants attempt to distinguish *Zalkind* and *Continental Heller* on the basis that their indemnification provisions applied to "breaches" of contractual obligations (Defs.' Reply Br. 4-5), but they do not explain why this is materially different from "failure . . . to perform" contractual obligations, the language in § 6.01.

13

> therein or any settlements thereof, and (ii) all liabilities, damages, losses, Taxes, assessments, costs and expenses (including, without limitation, reasonable attorneys' and accountants' fees and expenses) incurred by any indemnified party or parties, to the extent not reimbursed or paid for by insurance, whether or not they have arisen from or were incurred in or as a result of any demand, claim, action, suit, assessment or other proceeding or any settlement or judgment."

*Zalkind*, 124 Cal. Rptr. 3d at 109 (alterations in original; emphasis added). Interpreting this language, the court observed that it did "not limit indemnification to third party claims and extend[ed] indemnification to 'any and all' damages incurred by [plaintiffs] arising out of [defendant's] breach of [their agreement]. Read in the context of section 14.2, the word 'indemnify' makes better sense when read to mean 'make good,' 'reimburse,' or 'compensate.'" *Id.* at 116.

So, too, here. Section 6.01, which grants Spencer indemnity from attorneys' fees (and other categories of loss) it sustains "in any way related to" defendants' "failure . . . to perform" their obligations under the Agreement, is drafted similarly broadly, and defendants point to nothing elsewhere in the Agreement to support its argument that a third-party limitation should be read into it. *Cf.* Cal. Civ. Code § 1641 (contract to be read as a whole); *Zalkind*, 124 Cal. Rptr. 3d at 116-18 (looking to other provisions of agreement to aid in interpretation); *Hot Rods*, 196 Cal. Rptr. 3d at 64-65 (same). Although defendants briefly mention the text of § 6.02 of the Agreement, which permits them to assume the defense of third-party claims and pay related expenses and attorneys' fees subject to reimbursement from Spencer (unless defendants are required to indemnify Spencer under either § 3.03 or § 6.01), they do not explain, and the Court does not discern any logical reason why, § 6.02's references to the handling of attorneys' fees in third-party actions cannot coexist with an interpretation of § 6.01 that reaches both direct and third-party actions.

Spencer, for its part, points to several other provisions in the Agreement to support its interpretation, including §§ 2.04, 3.03, and 6.04. Although this language does not offer specific insight into the parties' intent as to particular language in § 6.01, neither do these sections conflict with the broad plain-language reading of § 6.01.[8]

Sections 2.04 and 3.03 are helpful in another way. Because contracts are to be understood with reference to the subject matter and circumstances of their making, *Mtn. Air*, 398 P.3d at 561; Cal. Civ. Code § 1647, objective evidence of the contracting parties' concerns can be illuminating. In *Hot Rods*, the court observed that it was "clear from the entirety of the contract" that a "primary concern" of one party was the property's environmental condition, and the contract accordingly permitted it to conduct diligence and included representations by the counterparty regarding environmental conditions. 196 Cal. Rptr. 3d at 65. The "reasonable inference" was that the party wanted to ensure that it would not be directly or indirectly responsible for covering environmental costs, and that the counterparty so guaranteed; under those circumstances, "interpreting the indemnity clause to cover both first and third party claims [was] consistent with the overall intent of the agreement." *Id.*

Here, the Agreement was designed so that although Spencer would own the mortgage loans, defendants would retain extensive rights and obligations in the servicing of those loans and, arguably, superior access to the mortgagors and underlying documentation. Spencer's exposure, then, hinged heavily on defendants' performance. Sections 2.04, 3.03, and 6.01 can

---

[8] Spencer also invokes § 6.02, arguing that its reference to third-party claims shows that the parties knew how to limit the applicability of contractual obligations to third-party scenarios and didn't do so in § 6.01. Although superficially appealing, this argument is ultimately unhelpful because it ignores that § 6.02 would be nonsensical without the express reference to third-party claims; no notice or assumption of defense would be necessary (or logical) in the event of a litigation between the parties.

reasonably be read as a counterbalance of that risk in Spencer's favor. Viewing § 6.01 in that context lends further support to an interpretation that protects Spencer in the event of both first- and third-party actions.

The authority on which defendants rely does not compel adoption of their contrary interpretation. Defendants rely particularly heavily on *Alki Partners, LP v. DB Fund Services, LLC*, 209 Cal. Rptr. 3d 151 (Cal. Ct. App. 2016). *Alki* reversed an award of attorneys' fees, holding that the relevant contract language was only a third-party indemnity provision. The provision – in which the indemnitor indemnified the indemnitee for the *indemnitee's* performance or non-performance – neither referenced nor distinguished between direct and third-party actions, but the court considered the use of the term "indemnify" to be a "key indicator" of a third-party-only indemnification provision. *Id.* at 171. It declined to "infer that the parties intended an indemnification provision to cover attorney fees between the parties if the provision 'does not specifically provide for attorney's fees in an action on the contract.'" *Id.* (emphasis omitted) (quoting *Myers Bldg. Indus. Ltd. v. Interface Tech., Inc.*, 17 Cal. Rptr. 2d 242, 254 (Cal. Ct. App. 1993)). Other language in the indemnification provision, including a reference to criminal proceedings, reinforced the court's conclusion that the provision was intended to cover only third-party claims. *See id.* at 173-74.

Although *Alki* reached a conclusion opposite to *Hot Rods* and other cases Spencer cites on an indemnification provision's silence as to direct and third-party claims, it is consistent with them in an important respect: it examined, to the extent applicable and pertinent, the specific language of the provision, the context of the provision in the contract as a whole, and the circumstances of the agreement in reaching that result. The same analytical approach is apparent

16

in the other cases defendants cite as supportive of their proffered interpretation because they limited an indemnification provision to third-party claims. (*See* Defs.' Moving Br. 10-11.)

That approach, applied to the language and circumstances here, simply points in a different direction. Considering the clear meaning of the words used in § 6.01, the agreement as a whole, relevant context, the interpretation of language in other cases (including the relevant authority the parties cite), and no extrinsic evidence having been properly presented and in any event being unnecessary,[9] the Court concludes that § 6.01 is reasonably susceptible to the interpretation offered by Spencer. Without inserting language that is simply not present, the provision is not reasonably susceptible to defendants' interpretation. Accordingly, the Court denies defendants' motion for judgment on the pleadings that Spencer is not entitled to its attorneys' fees in this action.[10]

## V.     Conclusion

For the reasons set forth above, defendants' motion is DENIED. An appropriate order will follow.

Date: December 31, 2018

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J

---

[9] Defendants cite certain information obtained in discovery. (Defs.' Moving Br. 8 n.2.) Aside from being outside the scope of what the Court may consider on this motion, it is unclear how this information would help them given the clear, and broad, language of § 6.01.

[10] Because liability remains unresolved at this point, the Court declines as premature defendants' invitation to rule on their entitlement to attorneys' fees under Cal. Civ. Code § 1717, which transforms, under certain circumstances, unilateral attorneys' fees provisions into reciprocal ones that operate in favor of the "party who is determined to be the party prevailing on the contract."